**Thomasena TINDALL, individually and on behalf of her household; Barbara C. Ankney, individually and on behalf of her household and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Clifford M. HARDIN, individually and in his capacity as Secretary of the United States Department of Agriculture, et al., Defendants.**

Civ. A. No. 71–847.

United States District Court,
W. D. Pennsylvania.

Jan. 18, 1972.

Thomas M. Lytton, Pittsburgh, Pa., for plaintiffs.

Richard L. Thornburgh, U. S. Atty., for defendants.

Donald J. Lee, Sp. Asst. Atty., for Commonwealth of Pennsylvania.

## OPINION

DUMBAULD, District Judge.

Legal scholars have often observed, that both in the Roman law and common law systems, the remedy or specific type of action historically came first. Not until later did legal philosophers analyze and classify the types of substantive rights recognized by the law, and endeavor to devise appropriate remedies to enforce them. In the more advanced and sophisticated stage of legal development, with primary emphasis upon the substantive rights, the maxim *ubi jus ibi remedium* was formulated.[1]

Adherence to this maxim has often resulted in judges finding themselves wrestling with matters which more fittingly ought to be handled in other forums. Judges have been castigated for assuming the role of a super-legislature",[2] "super draft boards"[3] or a "super-legal-aid bureau"[4] or a "super board of education."[5] One thinks also of the role of "super constitutional convention" assumed in redistricting under the "one-man one-vote" principle,[6] and of our col-

league in the Eastern District Judge Fullam's valiant service as "super railroad executive" in connection with the Penn Central bankruptcy.[7]

In the case at bar we essay the task of "super relief administrator" in order to give effect to the maxim *ubi jus ibi remedium* in connection with a computer breakdown in the issuance of food stamps.

The food stamp program, the testimony in the case at bar discloses, was first put into effect in the pioneer area of Fayette County, Pennsylvania.[8] The program, authorized by the Act of August 31, 1964, as amended,[9] was designed to distribute agricultural surplus items and other domestically produced food products, through commercial channels (replacing previous programs of direct distribution in kind through government agencies).

The plan undertook to better the diet of low-income beneficiaries by enabling them to purchase a better diet then they had been enjoying, rather than to help them continue the same diet at less cost to themselves.

In furtherance of this statutory scheme, the Secretary of Agriculture established uniform national standards of eligibility, pursuant to which the State agency of participating States issues food stamp coupons.

Coupon allotments shall be in such amount of face value as the Secretary finds from time to time to be the cost of a nutritionally adequate diet. However, the beneficiaries pay less than the face value for coupons. The amount they

---

1. Pound, Jurisprudence (1959) V, 441–50.

2. Justice Brandeis in Burns Baking Co. v. Bryan, 264 U.S. 504, 534, 44 S.Ct. 412, 68 L.Ed. 813 (1925).

3. Justice Clark in Witmer v. United States, 348 U.S. 375, 380, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

4. Justice Frankfurter in Uveges v. Pennsylvania, 335 U.S. 437, 450, 69 S.Ct. 84, 93 L.Ed. 127 (1948).

5. Justice Jackson in People of State of Ill. ex rel. McCollum v. Board of Education, 333 U.S. 203, 237, 68 S.Ct. 461, 92 L.Ed. 649 (1948). See also Lovelace

v. Leechburg Area School District, 310 F.Supp. 579 (W.D.Pa.1970).

6. See Negrich v. Hohn, 246 F.Supp. 173, 178 (W.D.Pa.1965).

7. E. g. for the latest of a multitude of opinions spawned by that fiasco see In the matter of Penn Central Transportation Co., 332 F.Supp. 1302 (E.D.Pa.1971).

8. Fayette County also enjoyed the distinction, during the Depression era, of having a higher percentage of the population on relief than any other county in the nation.

9. 78 Stat. 703, 7 U.S.C. § 2011 et seq.

pay is to represent "a reasonable investment" on their part, but in no event more than 30 per cent of the household's income. The amount paid is governed by a sliding scale, dependent on the beneficiaries' income bracket.

The coupons are accepted at face value by grocery concerns approved to participate in the plan, and are eventually redeemed at face value by the federal government.[10]

In other words, the beneficiaries receive coupons at a discount. It is as if the government instituted a plan to enable school children from impoverished areas to visit the National Capital, Independence Hall, the Alamo, Valley Forge, and other patriotic sites which every citizen should have an opportunity to visit, and issued through the State school system government transportation requests (at a discount varying in proportion with the beneficiary's lack of income) which the airlines and bus companies would accept from the passengers and present to the government for payment in accordance with the applicable standard rates and tariffs.

Although the Act indicates that the State agency shall issue the coupons [7 U.S.C. § 2019(b)], the testimony shows that the States in fact issue cards designated as ATP (authorization to purchase), which are then presented to banks in exchange for the coupons to be used in the grocery stores. The testimony of James H. Kocher, in charge of administering the program, points out that the program is voluntary in the sense that each month many ATPs issued are not exchanged for stamps especially by persons in higher income brackets where the *discount from face value of the* coupons obtainable is smaller.

Regulations provide that duplicate ATPs may be issued within the month of original issue in case of loss in the mails or other failure of the beneficiaries to receive their allotment.

Mr. Kocher is of the view that this one month period is adequate and rea-sonable, and that if delayed issuance of ATPs or purchase of coupons were permitted, it would encourage laxity on the part of State agencies in handling the issue and reissue of authorizations to purchase coupons.

The administrator also points out that to issue *nunc pro tunc* in a lump sum the amount of coupons in arrears would encourage illegal disposition of the coupons in the black market, as a glut of groceries would be purchasable in excess of what the family receiving such a windfall would normally be able to use.

The facts in the case at bar, as developed in the record, seem to show that due to computer breakdown on the part of the Pennsylvania State welfare agency a number of plaintiffs failed to receive (over a three-month period) their duly authorized allotment of ATPs. No negligence on the part of the federal government in connection with administration of the food stamp program is shown. The fault is that of the Commonwealth of Pennsylvania (or, as the defendants urge, the individual plaintiffs in failing to hound down the State welfare agency diligently enough and soon enough to obtain reissuance within the one-month period). But apparently the plaintiffs did contact their case-workers on more than one occasion, but without results.

The Commonwealth contends that it has no appropriations for bearing the cost of the stamps in arrears, but the federal government does. The State is ready and willing to take any administrative steps directed by the Court, but not to pay any money to make good the missing stamps.

The federal government (in addition to the usual arguments on sovereign immunity and the like) contends that the purpose of the food stamp plan is to provide a nutritious diet; that *non vivitur in praeterito*, a stamp recipient can not eat this month with nutritional advantage the food he should have eaten last month or three months ago; that if plaintiffs succeeded in surviving to the present

---

10. Specific appropriations are made for this purpose. 7 U.S.C. § 2025.

time [11] without the food they should have eaten in the past, nothing can be done about it now; that if in fact they did eat an adequately nutritious diet during the stamp shortage by skimping on other debts and obligations, their problem is purely a financial, economic, or pecuniary problem, incident to poverty, and not a nutritional problem relevant to the policies subserved by the food stamp program.

■ We agree with other courts that have passed upon the issue that the right to receive benefits under the food stamp program is a statutory entitlement. Issuance to eligible recipients is mandatory under the Act.[12] Deprivation of such a right is a denial of property, without (it would seem under the circumstances) due process of law. A violation of equal protection is also established by discrimination between eligible recipients who did, and those who did not, receive their allotments of stamps.[13] Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).[14]

The rule *ubi jus ibi remedium* has often been recognized by federal courts. Bateman v. Ford Motor Co., 302 F.2d 63, 66 (C.A. 3, 1962) [Equitable remedy implied]; Sullivan v. Little Hunting Park, 396 U.S. 229, 239, 90 S.Ct. 400, 24 L.Ed. 2d 386 (1969) [all necessary and appropriate remedies implied]; Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946) [any available remedy]; Jacobs v. United States, 290 U.S. 13, 16, 54 S.Ct. 26, 78 L.Ed. 142 (1933) [promise to pay just compensation implied by taking]; United States v. Johnson, 390 U.S. 563, 566, 88 S.Ct. 1231, 20 L.Ed.2d 132 (1968) [an extreme case

implying criminal prosecution in spite of express statutory limitation to other specified remedies]; J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) [such remedies as are necessary to make effective the congressional purpose].

■ We therefore follow the practice established by Judge Orrin G. Judd in Russo v. Kirby, E.D.N.Y.1971, 451 F. Supp. 122, where he declined retroactive adjustments as forbidden by the United States Department of Agriculture regulation, but directed "forward adjustments of food stamps." Recognizing that issuance of excess stamps would create a temptation to use the black market, Judge Judd went on to explain that

"Forward adjustment is not subject to these objections. It merely extends eligibility for the number of months the participant was wrongfully denied stamps. The participant would still purchase only one month's allotment each month and would not receive stamps in excess of the estimated monthly consumption of the household. Where a forward adjustment is made, the participant would not be tempted to sell the stamps or hoard food, but could use the money saved on food purchases to repay loans or credit received during the period when food stamps were improperly withheld, or to fill other family needs that had to go unfilled in that period. Nothing in the regulations forbids a forward adjustment by the issuance of additional food stamps in future months."

The Commonwealth will be directed to issue stamps in the future, and adjust the discount, until the plaintiffs' re-

---

11. Incidentally, plaintiff Tomasina Tindall died on December 8, 1971 (of what ailment the record does not disclose) but left children themselves eligible for food stamps during the period of non-receipt.

12. "The face value of the coupon allotment . . . shall be in such amount as the Secretary determines to be the cost of a nutritionally adequate diet." 7 U.S.C. § 2016(a). "The State agency of each participating State shall assume

responsibility for the certification of applicant households and for the issuance of coupons." 7 U.S.C. § 2019(b).

13. This Court therefore has jurisdiction under 28 U.S.C. § 1343.

14. See also Reich, "The New Property", 73 Yale L.J. 733 (1964); and Fontaine, "The Constitutional Law of Remedies in Welfare Litigation," 23 Maine L.Rev. 41 (1971).

spective hitherto-withheld allotments are exhausted.

We believe that it is not desirable or necessary to proceed in this action as a class action. There would be several hundred specific fact questions to be explored with respect to the affected recipients. We believe that the effect of this Court's holding as a precedent (particularly if upheld on appeal) will be honored by the respective State and federal administrators, and that they will doubtless make appropriate voluntary forward adjustments in the cases of other affected parties not participating in this litigation after the legal issues in controversy shall have been authoritatively settled.