Gloria **STEWART, Individually and on behalf of her household, and on behalf of all other persons similarly situated, Plaintiff,**

v.

Earl L. **BUTZ, Individually and in his capacity as Secretary of the United States Department of Agriculture et al., Defendants.**

Civ. A. No. 7429–G.

United States District Court,
W. D. Kentucky,
Louisville Division.

March 14, 1973.

---

1346

Graham B. Cooke, William C. Evans, Kurt Berggren, Gen. Counsel, Legal Aid Society of Louisville, Louisville, Ky., for plaintiff.

Paul Tierney, Dept. of Economic Security, Frankfort, Ky., A. Duane Schwartz, Asst. U. S. Atty., Louisville, Ky., for defendants.

## MEMORANDUM ORDER AND JUDGMENT

JAMES F. GORDON, Chief Judge.

This is a class action filed to adjudicate the rights of certain named plaintiff food stamp recipients under the Federal Food Stamp Act of 1964 as amended, Title 7, U.S.C. § 2011 et seq. Federal court jurisdiction is grounded upon 28 U.S.C. § 1331; Civil Rights Jurisdiction, 42 U.S.C. § 1983, and 28 U.S.C. § 1343(3) and (4); Mandamus Jurisdiction, 28 U.S.C. § 1361; Interstate Commerce Jurisdiction, 28 U.S.C. § 1337; and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706. A Declaratory Judgment is sought pursuant to 28 U.S.C. §§ 2201 and 2202, the Declaratory Judgment Act, and Rule 57, F.R.Civ.P. The lawsuit now comes before the Court on the motion of the plaintiffs for a summary judgment and the motions of the defendant governments (i. e., U.S.A. and the Commonwealth of Kentucky) to dismiss the complaint. Briefs have been submitted to the Court by all parties on all pending motions and thus the issues are now joined.

The factual context of this lawsuit is simple and not in dispute. The complaint of September 29, 1972, alleges that plaintiff Gloria Stewart was denied her right to purchase food stamps during the month of May, 1972, for the stated reason that she had purchased an amount of food stamps in excess of her quota for the preceding month, April, 1972. The complaint asserts further that the aforesaid suspension of rights came without a hearing, but that when plaintiff Stewart requested a hearing on May 18, 1972, a hearing was, in fact, conducted for her on July 7, 1972. The Hearing Officer's decision, dated September 7, 1972. was to the effect that plaintiff Stewart was wrongfully denied the right to purchase her food stamps during May, 1972, but that the Hearing Officer and the Kentucky Bureau of

Public Assistance were powerless under the terms of the Food Stamp Act to award her any type of retroactive benefits. As a final factual allegation, plaintiff Stewart states that she has suffered great dietary and financial harm due to the denial of the right to purchase food stamps during the aforementioned month. It is argued that the wrongful denial of food stamps to Mrs. Stewart constituted a violation of her Constitutional rights to Due Process and Equal Protection of the laws under the Fifth and Fourteenth Amendments, and that said denial was also a violation of the purpose and policy of the Food Stamp Act itself.

The relief sought in the complaint includes a preliminary and permanent injunction restraining the defendants from enforcing the regulation in dispute, FNS Instruction 732–14 and Section 549 of the Bureau of Public Assistance Food Stamp Handbook and injunctions restraining the defendants from not issuing the food stamps allegedly wrongfully withheld. The Court is further requested to order "retroactive relief" for the benefits withheld, to declare the named regulations to be unconstitutional and unlawful, and to order all other proper relief. Finally, we are asked to certify the plaintiff class as all Food Stamp recipients who, having prevailed at "fair hearings", have been denied any type of retroactive relief.

## THE CONTENTIONS OF THE PARTIES

The contentions of the parties can be briefly stated. The United States argues that, under the terms of the Act and its Regulations, the *states* bear the responsibility for the "timely issuance" of food stamps, and that when administrative errors by the states cause a failure in this respect the *states* should be required to pay for the actual benefits lost. It is argued that a "one-month cut-off of federal liability" is reasonable, and that beyond that period public policy reasons and "cooperative federalism" demand that the state pay for its "own mistakes." Federally-financed, retroactive relief, it is submitted, should not be allowed.

The Commonwealth of Kentucky argues that no action can be maintained against the state due to (1) the principle of Sovereign Immunity and (2) the Eleventh Amendment to the U. S. Constitution, which limits the power of a federal court to order the dispersal of funds from a state treasury.

As outlined above, the plaintiffs herein argue that they have a basic federal statutory *right* to food stamps wrongfully withheld, that a right implies a remedy, and that a denial of retroactive relief by the Federal Government is unconstitutional, contrary to the Food Stamp Act, and deprives one of Due Process and Equal Protection.

## THE BASIC LEGAL ISSUES PRESENTED

The legal issues presented by these facts and contentions can be framed in the following manner:

(1) Do Food Stamp recipients have an unqualified *right* to receive food stamps in cases where, as here, they are not issued food stamps during a given month, due to state administrative error, but make a "timely request for re-issuance?"

(2) Assuming such an unconditional right, is there a *remedy* permissible under the law to enforce that right?

(3) Assuming a right and a remedy, as between the Federal and State Governments which party should be financially liable for relief?

(4) Assuming liability, what is the most appropriate remedy?

(5) Assuming liability to Mrs. Stewart, plaintiff herein, should we certify this cause as a class action and thereby extend the same relief accorded plaintiff Stewart to all persons similarly situated?

## THE STATUTORY RIGHT TO FOOD STAMPS UNDER THE FOOD STAMP ACT OF 1964

The Food Stamp Act of 1964, Title 7 U.S.C. § 2011 et seq., was enacted by

Congress to provide federal funds to permit low-income families to purchase a nutritionally-adequate diet. The Congress thereby created a *statutory right* for those low income families who meet certain minimum national standards of eligibility.[1] The old rule of law that such welfare benefits were a mere privilege or gratuity that could be withdrawn at will by government has been totally discredited. The landmark Supreme Court case of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) elevated welfare benefits, including food stamps, to a position of *legal right* and statutory entitlement, rather than mere privilege. Accord: Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971)

■ Certainly we would agree that certain conditions and qualifications can be placed upon the statutory right to receive food stamps under the Act; provided, of course, that such conditions are adopted as *reasonable* Regulations that are compatible with the enabling legislation. But in the case at bar, the denial of food stamps appears to be unreasonable. Plaintiff Stewart met the basic qualifications for eligibility in November of 1971. When her right to receive stamps was suspended in May of 1972, she made a "timely request for re-issuance" well within the one-month period of non-issuance (May 18, 1972) as required by the Food Stamp Regulations. [(FNS Instruction 743-2) (1969) Sec. VI C]. The state agency failed to issue the stamps during the one-month period. However, after a hearing into the matter, conducted July 7, 1972, the Hearing Officer determined that the food stamps had been wrongfully withheld from Mrs. Stewart, that she had a "right" to receive said stamps, but that no "retroactive relief" was permissible from the Federal Treasury according to the Regulations. (See plaintiff's Exhibit A, page 4.) [Citing FNS Instruction 732-14(D) (1972)].

■ It is the opinion of the Court that under this statement of the facts, Mrs. Stewart has a federal statutory *right* to receive the food stamps wrongfully withheld from her, and that this right cannot be defeated simply by a state administrative error. To allow such a situation to exist would be clear-cut violation of Due Process of Law. Goldberg v. Kelly, supra.

## THE RIGHT TO FOOD STAMPS WRONGFULLY WITHHELD IMPLIES A REMEDY TO ENFORCE THAT RIGHT

■ The ancient legal maxim "Ubi jus ibi remedium" (i. e., Where there is a right, there is a remedy) lies at the very heart of Anglo-Saxon and American law. Federal courts have accepted this legal principle as elementary on numerous occasions, and have exercised broad equitable powers to fashion remedies to redress deprivations of federal statutory rights. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). In the case at bar, we hold that inasmuch as plaintiff Stewart has a federal statutory *right* to the food stamps wrongfully withheld from her during May of 1972, there must be a remedy available to her to enforce that right. The most appropriate place to seek such a remedy is of course this forum.

## THE FEDERAL GOVERNMENT— NOT THE STATE—IS LIABLE FOR FOOD STAMPS WRONGFULLY WITHHELD FROM RECIPIENTS DUE TO STATE ADMINISTRATIVE ERROR: REGULATIONS WHICH CONFLICT WITH THIS LIABILITY ARE INVALID AND MUST FALL

■ Having determined that the plaintiff, Mrs. Stewart, has a federal

1. See the Food Stamp Act of 1964, as amended, Title 7 U.S.C.A. §§ 2011; 2013; 2014; 2016(a) and 2019(b).

statutory right to the food stamps wrongfully withheld from her during May, 1972, and that, under basic rules of law, a remedy either at law or equity must be available to her in federal court to protect that right, we must now determine, as between the Federal and State Governments, which party should be financially responsible for that remedy.

In order to make that determination, we must look first to terms and policies of the Food Stamp Act itself. It is the clear, expressed intent of Congress that under the Act the federal government pay for the *benefits themselves*, while the states are to pay for a *portion of the administrative costs*. This dichotomy can be discerned from various portions of the Act, to wit:

"§ 2013 *Establishment of Program— Use of Coupons; Redeemability*

(a) * * * Coupons issued and used as provided in this chapter shall be redeemable at face value by the Secretary (of Agriculture) through the facilities of the Treasury of the United States."

§ 2023 * * * *Coupons as obligations of the United States*

\* \* \* \* \* \*

(d) Coupons issued pursuant to this chapter shall be deemed to be obligations of the United States within the meaning of Section 8 of Title 18.

"§ 2024 *Cooperation with state agencies; financing of administrative costs by States; certification assistance; payments to State agencies.*

(a) Each state shall be responsible for *financing* from funds available to the State or political subdivision thereof, the *costs* of carrying out the *administrative responsibilities* assigned to it, under the provisions of this chapter. Except as provided for in subsection (b) of this section, such costs shall include, but shall not be limited to, the *certification* of households, the acceptance, *storage*, and protection of coupons after their de-livery to receiving points within the States, and the *issuance* of such coupons to eligible households and the control and accounting therefor."

[(Emphasis Added) Title 7, U.S.C.A. §§ 2013(a); 2023(d); 2024(a)].

We begin, therefore, with a structure which limits state participation to administrative costs and places the financial burden of redeeming the food stamps themselves upon the shoulders of the federal government.

The federal government argues, however, that two Food Stamp *Regulations* adopted pursuant to the Food Stamp Act make an exception to this general rule and policy and *imply* that state governments may be financially responsible for the redemption of food stamp coupons under certain circumstances. These two regulations are FNS Instruction 734–2 (1969) sec. VI C, and FNS Instruction 732–14(D) (1972). The former provides for a "one-month cutoff of federal liability", and the latter provides that only the states, not the federal government, shall be liable for "retroactive relief" for food stamps not timely issued.

Section VI C of FNS Instruction 734–2 contains the remedy for any non-issuance of food stamps, assuming the household makes a timely notification of the non-receipt or loss (i. e., during the month in question). It provides:

"Emergency ATP Cards—In emergency cases (newly certified households in immediate need, loss or theft of ATP's, etc.) immediately prepare those ATP's which the household will need in order to participate *before the next regular preparation of ATP's.*"

According to the federal government, this Regulation creates a "one-month cutoff of federal liability" if stamps are not issued by the state during the one-month period. Specifically, in cases where food stamps are not issued due to state administrative error, or where the stamps are lost or stolen, the affected recipient must make a "timely request for reissuance" (i. e., during the month in question), and the state must then

reissue the stamps *during the same month*. If the stamps are not issued during the month, regardless of the reason, the federal government is no longer financially responsible for the redemption of said food stamps.

A second cited Regulation, FNS Instruction 732–14(D)[2] as amended August 28, 1972, also operates to limit federal liability by disallowing any type of federally-financed retroactive relief to food stamp recipients who have prevailed at "fair hearings" to determine if their stamps were wrongfully withheld. This Regulation limits retroactive relief to benefits from *state treasuries, if* such state money is available:

> "Following the hearing decision, retroactive adjustments in favor of the household shall not be permitted * * * This prohibition should not be construed to limit *state agencies* from issuing retroactive benefits from *state monies.*" (Emphasis added).

■ It is an elementary rule of Administrative law that administrative regulations are valid only if they are consistent with the enabling legislation. Townsend v. Swank, 404 U.S. 282, 92 S. Ct. 502, 30 L.Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). We must therefore juxtapose the challenged Food Stamp Regulations with the Food Stamp Act itself to determine if they are compatible.

■ The purpose and policy of the Food Stamp Act, as expressed by Congress in the statute, is to provide *federal funds* to assist poor families to purchase a nutritionally adequate diet. State funds are to be used under the Act only for a portion of the administrative costs. The regulations under attack, quite simply, are in conflict with the intent of Congress and operate to nullify the poli-cy and purpose of the enabling legislation. The one-month cutoff of federal liability is an unreasonable regulation because it effectively deprives a poor person of a federal statutory right simply because of a state administrative error. The Court cannot help but take judicial notice of (1) the vast administrative difficulties the states have encountered in issuing the food stamps under this Act, and (2) the superior position of the federal government financially vis-a-vis the state governments, albeit a slight advantage. We simply do not see the justice of allowing a poor food stamp recipient to be the loser caught in the midst of an administrative tangle between the federal and state governments. We think the federal government should face up to its responsibilities under the Food Stamp Act. The injustice of the situation becomes patent where, as here, the food stamp recipient makes a "timely request for reissuance" during the month of non-issuance (i. e., May, 1972) the state fails to reissue the stamps during the month, and the food stamp recipient subsequently prevails at a fair hearing in which it is determined that she indeed has a "right" to receive the stamps withheld from her, but that no (federal) remedy is available. We can see the need for some limit of federal liability for food stamps, but we do not believe that one month is reasonable. What would be reasonable is a question we need not decide.

■ Moreover, we believe that a *total ban* on any type of "retroactive relief" by the federal government for non-issuance of food stamp recipients who have prevailed at a fair hearing is also unreasonable and violative of the terms and policy of the Food Stamp Act. To the extent, at least, that this regulation forbids a "forward adjustment" of future

---

2. The state counterpart of this Regulation is § 549 of the Kentucky Bureau of Public Assistance Food Stamp Handbook which states: "Following the hearing decision, retroactive adjustments in favor of the household shall not be made except in cases of cash refunds made to recipients who have been overcharged the purchase price resulting from an error made on part of the certification or issuance personnel."

food stamp allotments, we hold that said regulation is also unlawful.

Certain types of "retroactive relief" by the federal government might indeed be unsound public policy, as is argued. To issue *extra* food stamps now (i. e., the food stamps that were not issued during the month in question) would open up avenues of fraud, such as a potential black market in food stamps. But a "forward adjustment" of the *price* of food stamps a recipient must pay in the future to compensate for the past loss *does not* present such dangers or objections.

Finally, our decision regarding federal liability herein is buttressed by a Constitutional point of law. We are persuaded that by virtue of the Eleventh Amendment a federal court lacks the power to issue an order which would require the expenditure of funds from a state treasury. Indeed, *states themselves* are not even proper parties in federal court under the terms of the Amendment, to wit:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Supreme Court has held that this Amendment also applies to a suit brought against a state *by one of its own citizens,* such as we have in the case at bar. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842; Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908). The Eleventh Amendment does not, of course, prevent a federal court from ordering a *state official* that he bring his conduct into conformity with federal law, but this equitable power does not extend to orders which would require the expenditure of state funds. Young, *supra*. In the very recent case of Rothstein v. Wyman, 467 F.2d 226 (1972), the Second Circuit Court of Appeals held that the Eleventh Amendment forbids federal district courts from requiring retroactive payments from state funds of public assistance benefits that were denied in violation of the Social Security Act. The court stated also that the necessity of "cooperative federalism" in such welfare programs (such as public assistance, or, in our case, food stamps) precludes the exercise of the equitable powers of a federal district court to order retroactive payments from state monies.

The only two federal courts which have dealt with this precise issue now before us for decision (District of Columbia and the Western District of Pennsylvania) have both reached the same result and ordered the same remedy, as we here order. In both Tindall v. Hardin, 337 F.Supp. 563 (1972) and Bermudez v. United States Department of Agriculture, 348 F.Supp. 1279 (1972), the *federal government,* not the state, was held liable for the deprivation of the right to receive food stamps. Both courts also ordered the same remedy, to wit: *an immediate forward adjustment* of future food stamp allotments to compensate for those stamps wrongfully withheld in the past. We see no compelling reasons to deviate from the *Tindall* and *Bermudez* holdings.

In Tindall v. Hardin, W.D.Penn., 1972, 337 F.Supp. 563, a number of food stamp recipients failed to receive their food stamps over a three-month period due to a computer breakdown on the part of the Pennsylvania State Welfare Agency. Failure to issue the stamps was wholly the fault of the state administrative agency; no negligence on the part of the federal government was present. The affected households made the required "timely request for reissuance" but the state of Pennsylvania failed to reissue the stamps during the critical one-month period according to the Food Stamp Regulations. Pennsylvania argued that it simply did not have the funds in the state treasury to redeem the coupons that were not issued. The federal government argued (1) that the food stamp recipients had simply failed to obtain reissuance of the stamps

during the one-month period, and that, under the Regulations, federal liability was terminated, and that (2) under the principle of "non-vivitur in praeterio" one cannot "turn back the alimentary clock"—that is, if the food stamp recipients have survived to date, they have no need for any relief.[3] The court, however, rejected these arguments and found that the federal government, not the states, should be liable for food stamps wrongfully withheld due to the state administrative error. The court cited the ancient rule that where there is a right, there is likewise a remedy, and then cited a New York decision supporting the remedy of a "Forward Adjustment"—

> "Where a forward adjustment is made, the participant would not be tempted to sell the stamps or hoard food, but could use the money saved on food purchases to repay loans or credit received during the period when food stamps were improperly withheld, or to fill other family needs that had to go unfilled in that period. Nothing in the regulations forbids a forward adjustment by the issuance of additional food stamps in future months. Russo v. Kirby, E.D.N.Y., 1971, 335 F.Supp. 122, 124."

The *Tindall* court then directed the State of Pennsylvania to "issue stamps in the future and adjust the discount, until the plaintiff's hitherto-withheld allotments are exhausted. 337 F.Supp. at p. 566–567.[4]

The District Court for the District of Columbia reached the same result as did the *Tindall* court, in the case of Bermudez v. United States Department of Agriculture, 348 F.Supp. 1279 (1972) (Exhibit to the memorandum of plaintiffs herein). In *Bermudez*, a number of plaintiff food stamp recipients challenged the federal policy of refusing to issue retroactive food stamps to eligible households wrongfully denied stamps due to state administrative errors. The court swiftly cast aside the contention of the federal government that retroactive stamps were "administrative costs", and thus the responsibility of the states. Said the court:

> ". . . [T]he Court holds that the *federal* defendants are liable for retroactive relief due the affected class. The most persuasive support for this holding, is the fact that the Food Stamp Act shows a congressional intent to have *program benefits* paid by the federal government, and a portion of the administrative expenses paid by the states. (7 U.S.C. 2023(d), 2024, 2025).

> " * * * There is little merit to the argument that retroactive stamps are an administrative cost, since it is quite clear that they represent a budgeted expenditure inadvertently saved through administrative error."

The *Bermudez* court further ruled that the "federal policy of denying retroactive benefits violates the purposes of the Food Stamp Act, and its grant of a fair hearing to those aggrieved by government action. [Citing 7 U.S.C. 2019(e)(6)]" The court then ordered the remedy of a "Forward Adjustment" of the price of food stamps for the plaintiff food stamp recipients. The order also enjoined the defendants from implementing Regulation 732–14 § V-D, which purports to forbid federal-financed retroactive food stamps.

This Court is fully persuaded that the holdings in *Tindall* and *Bermudez* are correct. We, likewise, reach the following conclusions of law:

▪ (1) That FNS Instruction 734–2 (1969) which sets up a one-month cutoff of federal liability for the redemption of food stamp coupons is "un-

---

3. Under this reasoning, we presume, the food stamp recipients would only be due some relief if they had starved to death.

4. Tindall v. Hardin, now styled Carter v. Butz, due to the death of plaintiff Tindall (from an unspecified illness) and a new Secretary of Agriculture, is on appeal to the Third Circuit Court of Appeals.

reasonable" and invalid, insofar as it attempts to categorize retroactive food stamp adjustments as administrative costs to be borne by the states, rather than program benefits to be borne by the federal government.

■ (2) That FNS Instruction 732–14(D) as amended is also unreasonable and invalid inasmuch as it is incompatible with the policies and purposes of the Food Stamp Act itself; the denial of any type of federally-financed retroactive food stamp relief is incongruent with the statutory right to receive food stamps and the financial structure of the Act itself.

(3) That a "Forward Adjustment" of the future *price* of food stamps for the plaintiff recipients, funded by the federal government, will provide just compensatory relief to those denied stamps, will not lend itself to fraud, and is indeed the most appropriate remedy.

## THE MOST APPROPRIATE REMEDY FOR THE WRONGFUL WITHHOLDING OF FOOD STAMPS IS A FORWARD ADJUSTMENT OF THE PRICE OF FUTURE STAMPS FUNDED BY THE FEDERAL GOVERNMENT

■ The most appropriate remedy in the case at bar is therefore a "Forward Adjustment"—as ordered by the District Courts in *Tindall* and *Bermudez,* supra. However, rather than order additional stamps per se, as the court directed in *Tindall,* we believe that the best course is to order a forward adjustment of the *price* of future food stamps, as the court wisely ordered in *Bermudez,* supra. The procedure is quite simple: The state administrative agency simply reduces the price of food stamp coupons in future months by whatever amount necessary and during as many months as necessary so as to fully compensate the recipient financially for the food stamps wrongfully denied in the past.

## THIS CAUSE SHOULD BE CERTIFIED AS A CLASS ACTION TO EXTEND THE SAME RELIEF TO ALL FOOD STAMP RECIPIENTS WHO HAVE WRONGFULLY BEEN DENIED FOOD STAMPS AND RETROACTIVE RELIEF

■ We hold that the prerequisites for the maintenance of a Class Action have been met under Rule 23(a) and (b)(1) of the Federal Rules of Civil Procedure. Certainly this action presents a basic, common question of law, affecting a large group of people whose joinder would be impracticable. Moreover, the prosecution of separate actions by individual members of the class (i. e., Food Stamp recipients) would create a risk of varying adjudications resulting in possible incompatible standards of conduct by the defendant government agencies. We, therefore, certify the plaintiff class to be the following group, to wit:

> "All Food Stamp recipients in the Western District of Kentucky who, having won 'fair hearing' determinations that their food stamps were wrongfully withheld, have been denied retroactive benefits by the federal government."

It has become clear to us during the course of this lawsuit that a national policy on this question is, of course, to be desired. However, we cannot be sure just when such a national policy change will come. The Pennsylvania District Court in *Tindall,* supra, refused to permit a class action on the theory that its decision would prompt a national policy change by the federal government on the matter. But *Tindall* is still on appeal to the Third Circuit Court of Appeals, and no such policy change has yet come into being. The United States District Court for the District of Columbia in *Bermudez,* supra, certified a *nationwide class* of Food Stamp recipients. But *Bermudez,* likewise, is on appeal to the Third

**1355**

Circuit Court of Appeals. It is quite likely that a decision from the Supreme Court will be necessary to effect a nationwide policy change. But, in the interim, justice demands that all Food Stamp recipients in the Western District of Kentucky be accorded the same relief we award today to Mrs. Stewart.

Wherefore, it is hereby ordered and adjudged that the motion of the United States to dismiss the complaint for failure to state a claim for which relief may be granted is hereby overruled: the motion of the defendant Commonwealth of Kentucky to dismiss the complaint as to it is hereby sustained; the motion of the plaintiffs for a summary judgment, pursuant to Rule 56, F.R.Civ.P., is hereby sustained, and they are accordingly granted a judgment as a matter of law, with costs.

It is further ordered and adjudged that:

(1) FNS Instruction 732–14 and Section 549 of the Kentucky Bureau of Public Assistance Food Stamp Handbook be and they hereby are declared unconstitutional and in violation of the Food Stamp Act of 1964; defendants, their agents, employees, and successors in office are permanently enjoined, prohibited and restrained from implementing said Instruction.

(2) FNS Instruction 734–2 (1969) be and it hereby is also declared unconstitutional to the extent that it purports to end all federal liability for retroactive Food Stamp benefits after a one-month period; defendants, their agents, employees and successors in office are likewise restrained from so construing and so implementing said Regulation.

(3) Defendants are ordered to provide the plaintiff and the plaintiff class with a remedy of a "Forward Adjustment" of Food Stamp prices pursuant to the procedure outlined in the test of this opinion.