Patricia COTTON, on behalf of herself and all other persons similarly situated, Plaintiff,

v.

Agnes M. MANSOUR, personally and in her official capacity as Director of the Michigan Department of Social Services, Defendant.

No. 85–CV–40068–FL.

United States District Court, E.D. Michigan, S.D. At Flint.

April 11, 1986.

Terri L. Stangl, Legal Services of Eastern Mich., Flint, Mich., for plaintiff.

Erica Weiss Marsden, Asst. Atty. Gen., Lansing, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court are the parties' Cross Motions for Summary Judgment. Plaintiff, a recipient of Aid to Families with Dependent Children (AFDC) and food stamps under the Food Stamp Program, brought this action for declaratory and injunctive relief to enforce her entitlement to food stamps. More specifically, plaintiff requests a declaratory judgment holding that defendant's prior policy of calculation was unlawful, that defendant be ordered to provide plaintiff wrongfully-withheld food stamps and that defendant be ordered to issue notice of underpayment and notice of the administrative mechanisms through which claimant's eligibility will be calculated.

## I FACTS

In early 1984, plaintiff moved into a new apartment and to receive her AFDC grant for shelter, she gave her landlord a shelter verification form which he failed to return to the Michigan Department of Social Services, (MDSS) until March 1984. Thus, plaintiff did not receive her February AFDC grant until May 1984. This was just the beginning of plaintiff's problems because when MDSC calculated plaintiff's July, 1984 food stamps allowance, it counted this retroactive shelter allowance as extra income thereby reducing her July food stamps allowance. Although her February rent was to be paid with this allowance, the MDSC considered it available for food. MDSS claimed its method of calculation was correct because it considered the shelter allowance to be a corrective payment under 7 C.F.R. § 273.21(j)(1)(vii)(B).

■ The Food Stamp Act, 7 U.S.C. § 2011 *et seq.* was enacted by Congress to provide federal funds to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power ..." Food stamps, as well as other welfare benefits, are a legal right and statutory entitlement. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Administration of food stamp programs is handled by a state agency of each state which participates in the program. 7 U.S.C. § 2020. In Michigan, MDSS administers the pro-

gram and is bound by federal statute and regulations.

Food stamp eligibility is based on household income. 7 U.S.C. § 2012(e), 7 C.F.R. § 273.1(a). Certain income is exempt, 7 C.F.R. § 273.9(c), and MDSS deducts a variety of expenses including shelter expenses. Food stamp allotment for a particular month is based on the remaining income of a month two months prior. Starting in 1981, the federal government made changes requiring states to more promptly increase a family's AFDC grant when need increased, 42 U.S.C. § 602(a)(14)(B), so that by 1983 corrective payments could be issued in the same month needed. 48 F.R. § 54955. (Plaintiff's Ex. D). As a result, the Department of Agriculture amended food stamp regulations so that corrective payments were to be counted prospectively or retrospectively depending on what they were for. 7 C.F.R. § 273.21(j)(i)(vii)(B).[1]

A comment accompanying this regulation indicated that retroactive payments intended to meet the needs in one or more previous months must be excluded as income pursuant to 7 C.F.R. § 273.9(c)(8). A memorandum issued in August 1984 by the Food and Nutrition Service (FNS) reaffirmed this in that "amounts [AFDC benefits] restored for prior months is disregarded as a non-recurring lump-sum payment regardless of the source of the payment." (Def. Ex. A–1) Although this memorandum was issued in August, MDSS did not change its policy[2] until December 1984 nor did it notify food stamp recipients that they could request an administrative hearing. Defendant responded to plaintiff's written inquiry that it would not issue such a notice because:

a) It believed its method of budgeting prior to August 1984 was authorized by FNS, and

b) It believed that the delay between August 28, 1984 and December 1, 1984 was a reasonable time for the state to change its policy to be consistent with the FNS memo.

## II

Plaintiff contends that MDSS's method of budgeting corrective payments violated federal welfare laws both before and after the August 1984 memo[3] and seeks declaratory relief to "declare that defendant's method of budgeting ... supplemental ... payments violates 42 U.S.C. § 1983, the Food Stamp Act and the United States Constitution." (Pl.Comp. ¶ 3). While it is true that when a state administers food stamps in a manner more restrictive than required by federal law that courts have not hesitated to grant declaratory relief, defendant argues that subject matter jurisdiction is lacking because there is no longer a case or controversy as required under Article III, Section 2, clause 1 of the United States Constitution or 28 U.S.C. § 2201. Defendant contends that to the extent that plaintiff requests prospective relief, that issue was moot prior to plaintiff's filing her suit on February 15, 1985 because the MDSS changed its policy on December 1, 1984 to budget non-recurring supplemental assistance payments in the manner sought to be compelled by plaintiff.

The "case or controversy" requirement in Article III prevents federal courts from considering questions which have become moot. *St. Pierre v. United States,* 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943). As defendant points out, the United States Supreme Court in *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) stated:

To be cognizable in a federal court, a suit 'must be definite and concrete, touching

---

1. Michigan counted payments retrospectively under a method which counted all supplemental checks when computing income.

2. The MDSS had been counting such supplemental payments in food stamp budgets which resulted in a decrease of food stamps. Prior to this time (March, 1984), defendant had not

counted such supplemental payments. (Def. Ex. A).

3. Defendant states that for purposes of this motion, plaintiff's general allegations may be taken as true.

the legal relations of parties having adverse legal interests...' However, moot questions require no answer... Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions,'...

Moreover, the "case of actual controversy" requirement in the Declaratory Judgment Act, 28 U.S.C. § 2201, is considered to be the same as that in Article III. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

█ To the extent that plaintiff seeks a declaratory judgment and any prospective injunctive relief as to defendant's food stamp allotment budget policies that portion of plaintiff's claims should be dismissed as moot. Plaintiff's claim for retroactive relief, however, is different.

### III

Plaintiff requests retroactive relief in the form of unissued food stamps and that defendant be required to notify class members whose stamps were wrongfully withheld. Defendant argues that the Court lacks jurisdiction because of the Eleventh Amendment. The Eleventh Amendment provides a restraint on federal courts exercising jurisdiction over suits brought by individuals against states, including citizens of their own states.[4] *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). To the extent that state officials

4. "[T]he rule has evolved that a suit by private parties seeking *to impose liability which must be paid from public funds* in the state treasury is barred by the *Eleventh Amendment.*" *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (emphasis added). *See also Green v. Mansour*, — U.S. —, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985) (Because of the Eleventh Amendment, states may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity.)

5. Defendant criticizes plaintiff's use of *Stewart* in that it never raised the issue of administrative costs and that it was decided prior to *Edelman, supra.* Though it is true that *Stewart* never reached the issue of administrative costs, it is not here cited for that issue. Moreover, *Stewart*

are sued (in their official capacities) for retrospective relief, they enjoy Eleventh Amendment protection unless there is an exception. Plaintiff contends that food stamps are entirely financed by federal funds through the United States Department of Agriculture (USDA) and that the only costs to be borne by the state are administrative for which it may not claim immunity.

### A.

█ It is obvious that states cannot claim relief from a retroactive award of food stamps. In *Stewart v. Butz*, 356 F.Supp. 1345 (W.D.Ky.1973), *aff'd* 491 F.2d 165, the Sixth Circuit Court of Appeals held that the federal government, not the state, must pay for food stamps wrongfully withheld. The Court upheld the district court's opinion which used the Eleventh Amendment as a reason for holding the federal government liable for wrongfully withheld welfare benefits: "The necessity of 'cooperative federalism' in such welfare programs ... precludes the exercise of the equitable powers of a federal district court to order retroactive payments from state monies." *Id.* at 1352.[5] *See also Carter v. Butz*, 479 F.2d 1084 (3d Cir.), *cert. denied* 414 U.S. 1103, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973) ("Under the [Food Stamp] Act ... the Federal Government pays for benefits... while the state pays for a portion of administrative costs.);[6] *Harrington v.*

is clearly consistent with *Edelman* which involved a program funded by both the federal and state governments so that the federal courts' remedial power, to be consistent with the Eleventh Amendment, would not allow a retroactive award which would require the payment of funds from the treasury. *Stewart* involved a wholly federally funded program.

6. When considering whether to construe the act as permitting the implementation of a remedy against the state rather than federal government, we cannot disregard the fact that Congress has appropriated funds for the payment of the benefits ... while the states have not. This is not to suggest that it would have been beyond the power of Congress to require as a condition of the state's participation in the program a waiver of sovereign immunity to

*Blum,* 483 F.Supp. 1015 (1979) *aff'd* 639 F.2d 768 (2d Cir.1980). (Because states may seek reimbursement from the USDA for retroactive benefits paid, states may be ordered to arrange for the award of retroactive benefits);[7] and *Collins v. Marshall,* 507 F.Supp. 83 (W.D.Mo.), *rev'd on other grounds sub nom. Collins v. Donovan,* 661 F.2d 705 (8th Cir.1981).

Thus, it is concluded that ordering the state to arrange for wrongfully withheld benefits will not, at least to the extent of the food stamps, violate the Eleventh Amendment. In fact, from a review of defendant's brief it appears that defendant has only raised the issue of whether she must provide notice to recipients of their entitlement to additional food stamps and the procedures through which they could process their claim. Moreover, it appears that defendant wrongfully withheld food stamps due to its policy of including supplemental payments from March 1, 1984 to December 1, 1984.

### B.

■ Plaintiff argues that administrative costs associated with notice does not bar plaintiff from receiving retroactive food stamps because these costs are distinguishable from food stamps and the Eleventh Amendment is not involved. Clearly, the administrative costs are distinguishable from food stamps. *See* above cited cases. *See also* 7 U.S.C. § 2020(e)(9)(A)(11); 7 C.F.R. § 273.17(b). Moreover, the costs of arranging the retroactive payments does not involve the Eleventh Amendment.

Although the United States Supreme Court has not reached this issue directly, other Supreme Court opinions dealing with the general area and lower court opinions dealing with the issue directly, indicate that

costs of arranging for retroactive payments, which themselves are paid by the federal government, do not involve the Eleventh Amendment.

Various lower court opinions have held that administrative costs caused by a decision are not within the Eleventh Amendment's immunity for state defendants. In *Collins, supra,* the district court ordered that a recipient or a wholly federally funded unemployment insurance, state administered, program should be restored unemployment insurance funds improperly withheld from them. In response to the state's contention that this was barred by the Eleventh Amendment, the court stated:

> The state defendants have carried out the regulation promulgated by the Secretary, in administering the recoupment of overpayment on the basis of the regulation... Any claims in this case for the amounts which have been recovered through this method are not barred by the Eleventh Amendment. Federal, not state, funding is essentially involved. *Cf., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Any administrative cost indirectly caused by this ruling would not create an immunity for the state defendants. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

*Id.* at 86.[8]

Defendants point to the Second Circuit case of *Colbeth v. O'Rourke,* 707 F.2d 57 (2nd Cir.1983) which affirmed a district court decision dealing with retroactive food stamp relief. The district court in *Colbeth v. Wilson,* 554 F.Supp. 539 (D.Vt.1983), refused to order the state to issue a form of notice sanctioned in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358

---

the extent of retroactive benefits ... But nothing in the Act suggests any such conditional intent.

*Id.* at 1088.

**7.** In fact, 7 C.F.R. § 271.1(q)(1)(1978) [now § 273.17] provides that retroactive benefits are to be given by the State in cases of administrative errors such as erroneous denials: '[d]enials include, but are not limited to, in-

stances where a State agency has erroneously denied the application ...' Given this specific provision for payment of retroactive benefits, there is no reason to doubt that the State will be reimbursed for retroactive food stamp benefits.

*Id.* at 1021.

**8.** *See also Harrington, supra* and *Carter, supra.* Both cases were discussed above.

(1979), advising recipients of their possible eligibility for retroactive relief. Because of the magnitude of administrative expenses associated with the grant of retroactive relief, which would "demonstrably and significantly interfere with the State's budgetary process and thus its fiscal autonomy," *id.* at 545, the court concluded that the retroactive relief would be barred.

Moreover, the court held that a *Quern* notice was barred because defendant showed (and plaintiff conceded) that the issuance of the notice would be effectively burdensome to the defendant—

> due to the estimated size of the class, the fact that class members and present recipients of benefits are not necessarily one and the same group, and the probability that several forms of notice would likely have to be used.

*Id.* at 546.[9]

Defendant, here does not indicate how the retroactive award of benefits or the notice relief would be effectively burdensome to the state.

Moreover, though defendant tries to distinguish it, *Quern, supra,* supports plaintiff's position. The issue in *Quern* was whether the federal court could order state officials to send an explanatory note to members of plaintiffs' class advising them of state administrative procedures available by which they could receive a determination of whether they were entitled to past benefits. The court stated:

> We think this relief falls on the *Ex Parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] side of the Eleventh Amendment rather than on the *Edelman [v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)] side ... [Petitioner contends] that the proposed notice will lead ... to the payment of state funds for retroactive benefits and therefore, it ... amounts to a monetary award. But the chain of causation ... is by no means

unbroken; it contains numerous missing links, which can be supplied ... only by the state and members of plaintiff claim and not by a federal court. The notice ... simply apprises ... class members of the existence of ... administrative procedures already ... available under state law by which they may receive a determination of eligibility for past benefits.

*Id.,* 440 U.S. at 346–48, 99 S.Ct. at 1147–49.

In this case, defendant argues that *Quern* is inapplicable because in *Quern* mootness was not involved and there was prospective injunctive relief already ordered by the court. Such is thus claimed to be inappropriate here because the issue is moot. The fact that *Quern* did not involve mootness is irrelevant and to limit *Quern* to situations in which the Court has already granted prospective relief would be incorrect. A more logical reading of *Quern* is that ordering a state to bear the administrative costs of notice would not be barred by the Eleventh Amendment "if the notice is ancillary to the grant of *some other appropriate relief* that can be 'noticed.' " *Green v. Mansour, supra,* 106 S.Ct. at 427. (emphasis added.) The fact that *Quern* involved prospective relief does not limit its application. In this case the notice will be ancillary to the grant of some other appropriate relief—the retroactive award of food stamps paid by the federal government.

Defendant also contends that *Green v. Mansour, supra* supports its position. In *Green* changes in federal law rendered moot plaintiff's claim for prospective relief. The remaining claims for declaratory and notice relief related solely to past violations of federal law. In holding that notice relief was barred by the Eleventh Amendment the Court reasoned that notice was not intended "to be an independent form of relief" but must be ancillary to the grant of some other appropriate relief that can be

---

**9.** The *Colbeth* court also noted that *Quern* was limited to prospective relief to which the notice was ancillary. This is found to be an artificial distinction and that the reasoning in *Quern* supports the decision rendered herein. Next, *Colbeth* noted that the notice would allow plaintiffs to pursue their claims on the state administrative and judicial levels. However, *Quern* rejected this type of reasoning. The Eleventh Amendment was intended to protect against federal judgments requiring payment of money that would interfere with a state's fiscal autonomy.

noticed. *Id.* at 427. Because there was no continuing violation of federal law to enjoin in *Green,* the Eleventh Amendment barred the notice relief.

In this case, as plaintiff points out, *Green* is not applicable. *Green* involved notice relief for recipients of Aid to Families with Dependent Children (AFDC) benefits not the food stamp program. AFDC was funded by both state and federal governments while food stamps are wholly funded by the federal government. Thus, the retrospective relief in this case is not barred in that the state's fiscal autonomy is not affected and the notice relief can attach to an appropriate form of relief. Moreover, as plaintiff points out, plaintiff in this case, unlike *Green,* is not asking the Court to make an exception to the Eleventh Amendment, but rather to order the defendant to provide the notice that Congress has required.[10] This would "prospectively require defendant to set up the mechanism to provide the requisite notice to plaintiff." (Pl.Supp. Brief at 9.)

Thus, the Eleventh Amendment does not bar the court from ordering the defendant to notify recipients of the lost benefits and the procedures through which they may determine whether they are eligible.[11]

## IV

■ Defendant argues that she is immune from liability in her individual capacity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court clarified the test for qualified immunity of public officials. To overcome the defense of qualified

immunity it must appear that the defendant official violated clearly established constitutional or statutory rights of which a reasonable person would have known.

> ... [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known ... Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful ...

*Id.* at 818, 102 S.Ct. at 2738.[12]

Qualified immunity is purely a legal question to be determined by the trial judge prior to trial. *Donta v. Hooper,* 774 F.2d 716 (6th Cir.1985).

■ In the instant case, defendant stated that there is no question that her actions did not violate any clearly established federal statutory or constitutional rights of which a reasonable person would have known. The Court agrees. There is no indication that the federal statutory or con-

---

10. 7 U.S.C. § 2020(e)(9)(A)(11). *See also* Conf. Rep. 97–377, p. 221 (12/9/81), U.S.Code Cong. & Admin.News 1981, pp. 1965, 2318 ("that state agencies be required to notify households of known improper denials as soon after discovery as possible and that households be told of the proper form for making a request for restoration of lost benefits.")

11. Because of this holding the court need not reach plaintiff's contention that Congress abrogated the state's immunity with respect to the administrative costs for restoring lost food stamps.

12. The *Harlow* test for qualified immunity applies to suits against state officials under § 1983. *Id.* at 818 n. 30, 102 S.Ct. at 2738 n. 30. "[T]he qualified immunity defense only protects [officials] in [their] individual capacity from money damages, not from other forms of relief sought..." *Little John v. Rose,* 768 F.2d 765 (6th Cir.1985). "An official is not entitled to immunity from actions seeking only injunctive or declaratory relief." *Spruytte v. Walters,* 753 F.2d 498, 510 (6th Cir.1985).

stitutional right was clearly established when defendant took the actions as to which plaintiff complains. Moreover, plaintiffs do not raise such a case to show it. Thus, to the extent that plaintiff seeks money damages (but not injunctive or declaratory relief) in her individual capacity, defendant is entitled to qualified immunity.

## V

Finally, defendant argues that the Court must dismiss the class claims for lack of jurisdiction. More specifically, defendant contends that because plaintiff's claims are moot and barred by the Eleventh Amendment, the action cannot continue as a class action since a named plaintiff with a current live claim does not exist. However, having held that plaintiff is entitled to retroactive food stamps from the time defendant began the policy of counting supplemental payments in food stamp budgets until that policy was changed to conform to federal regulations, her claims are not moot.

## CONCLUSION

Therefore, for the reasons stated, defendant's Motion for Summary Judgment is DENIED except as to the claim for prospective relief which is moot. Plaintiff's Motion is GRANTED, and defendant is HEREBY ORDERED to take administrative steps to restore to plaintiff all food stamps wrongfully withheld between March 1, 1984 and December 1, 1984 and to provide notice to all class members, to be designated or a type designated by the above-mentioned federal regulations. All that remains is the issue of class certification to which the parties are hereby ordered to submit briefs within 30 days.

IT IS SO ORDERED.