[Civ. No. 26750. First Dist., Div. Two. Mar. 16, 1971.]

CITY AND COUNTY OF SAN FRANCISCO,
Plaintiff and Respondent, v.
CITY INVESTMENT CORPORATION, Defendant and Appellant.

## COUNSEL

Richard E. Peritz for Defendant and Appellant.

Thomas M. O'Connor, City Attorney, William J. Mallen and John S. Kenny, Deputy City Attorneys, for Plaintiff and Respondent.

## OPINION

**TAYLOR, J.**—City Investment Corporation (hereafter owner) appeals from an order and judgment in injunction in favor of the City and County of San Francisco (hereafter City) decreeing the demolition of a building as a statutory and common law nuisance. The owner contends that: 1) the City was estopped from prosecuting the instant action by the parties' 1966 agreement; 2) the court erred in the admission of certain documentary

evidence concerning the intent of the agreement, and other evidence obtained by an unlawful search; and 3) the court erroneously applied the City's Municipal Code to an unoccupied building, and the evidence was insufficient to support the findings of statutory and common law nuisance.

The record reveals the following facts: The structure in question is a fire-gutted shell of a building that had been a three-story dwelling consisting of 64 living units and two stores. On April 4, 1963, the building was inspected by the City. The City issued a complaint through its Department of Public Works and an order dated November 20, 1964, requiring the 23 code violations disclosed by the inspection to be remedied within 90 days. Thereafter, the owner secured the requested permits through the appropriate City departments and began to correct the deficiencies. In March 1964, the building was gutted by fire. Thereafter, all repair work was discontinued.

On October 2, 1965, the City commenced the instant action, alleging both common law and statutory nuisance, and sought abatement. Subsequently, the City and the owner entered into an agreement dated May 11, 1966, requiring the owner to keep the premises vacant and unoccupied, to securely barricade the premises against the entry of unauthorized persons, and to maintain the exterior of the building in order to prevent further deterioration. A letter from the City to the owner's attorney dated June 22, 1966, transmitting the unexecuted copy of the agreement, stated that "As you realize, this is only a temporary stopgap measure and the City anticipates, according to your representations, that the City Investment Corporation will embark on a program of rehabilitation of the premises as soon as it is financially practical to do so." The agreement was signed by the owner, and recorded on July 6, 1966. The owner obtained permits to barricade the building and employed a special patrol officer to check the premises daily from 7 p.m. to 3 a.m. and make certain they remained vacant.

No further repair work was ever commenced and the building continued to deteriorate. On September 18, 1967, the City wrote a letter to the owner's attorney indicating that according to a recent inspection by the Department of Public Works, the premises were not being maintained in accord with the agreement to prevent entry by unauthorized persons and to prevent further deterioration. The letter indicated that the building was an eyesore, detrimental to the neighborhood, urged that some steps should be taken as soon as possible, and also pointed out that ". . . the City has no alternative but to take appropriate legal action." As the owner continued to do nothing, the instant action was reinstituted and tried on May 23, 1968.

At the trial, Mr. Kass, the authorized representative of the owner, testified that the owner's understanding was that the 1966 agreement would continue in effect to bar any further action by the City as long as the premises were maintained in a vacant and barricaded condition. Over the owner's objection, the court admitted the City's letters of June 22, 1966, and September 18, 1967. On cross-examination, Mr. Kass admitted having seen the letter of June 22, 1966. Over the owner's further objection based on the Fourth Amendment of the United States Constitution, the trial court admitted the testimony of City Building Inspector Fisher, who had entered the open premises on March 14 and May 22, 1968, and found many code violations. The City also presented the testimony of Fire Inspector Hallstrom and two neighborhood property owners concerning the condition of the property.

The trial court found that at all times, the owner had notice and knowledge that the premises constituted a public nuisance and has failed and refused to comply with the City Department of Public Works' order of November 20, 1964. The court further found that a more than reasonable time has elapsed since that order, and the building, as presently maintained, constituted a fire hazard and hazard to the health and safety of the public, and was a continuing statutory and common law nuisance, visible and injurious to the real and personal property of a large number of the residents of the City.

The trial court concluded that the premises were structurally unsafe, constituted a fire hazard, a public nuisance, and were in violation of the State Housing Act, the California Administrative Code, title 8, chapter 9, and certain chapters of the City's building, planning, electrical, fire, health, plumbing and gas appliance, and housing sections of the City Municipal Code, and entered its judgment and injunction directing that the nuisance should be abated forthwith.

■ The owner first contends that the City was estopped from prosecuting the instant action by the agreement. As the record indicates that the defense of estoppel was not raised by the pleadings or at the time of trial, the matter cannot be raised in a dilatory fashion for the first time on appeal (*Sinai* v. *Mull*, 80 Cal.App.2d 277 [181 P.2d 924]). Furthermore, the doctrine of estoppel may not be invoked to perpetuate a public nuisance (*County of San Diego* v. *Cal. Water etc. Co.,* 30 Cal.2d 817 [186 P.2d 124, 130, 175 A.L.R. 747]).

■ The next contention on appeal concerns the alleged erroneous admission into evidence of the City's letters of June 22, 1966, September 18, 1967, and the testimony of Building Inspector Fisher. As to the June letter,

the owner contends it was a self-serving hearsay statement, and was admitted in violation of the parol evidence rule. As indicated in our summary of the facts, the June letter was admitted after Mr. Kass testified that the owner believed the agreement permitted maintenance of the building in its vacant and barricaded state for an indefinite period of time. The letter was admitted to impeach his testimony. On cross-examination, Mr. Kass admitted seeing the June letter with its specific reference to the agreement "as a temporary stopgap measure" and the City's assumption that the owner would embark on a program of rehabilitating the premises. As the June letter was offered to impeach the testimony of Kass and not to prove the truth of its contents, it was not hearsay (Witkin, Cal. Evidence (2d ed. 1966) p. 424). The owner's contention that the June letter was inadmissible as a self-serving statement overlooks the fact that it was written before the agreement was executed and in no way disparaged the agreement.

 The contention that the admission of the June letter violated the parol evidence rule is likewise without merit. The record discloses that when the letter was marked for identification and read into evidence, the owner's objections were confined to hearsay, irrelevance and immateriality. Thus, the technical general objection here made without any specific objection on the basis of the parol evidence rule deprived the court below of the opportunity to rule on the matter at that time, and the question of parol evidence is improperly raised for the first time on appeal (*Crummer* v. *Zalk*, 248 Cal.App.2d 794 [57 Cal.Rptr. 185]).

 Even assuming that the matter could properly be raised, the parol evidence rule, with certain exceptions, prohibits the introduction of any extrinsic evidence, oral or written, to vary or add to the terms of an integrated written instrument (Witkin, Cal. Evidence (2d ed. 1966) p. 660, § 714). An agreement is integrated when the parties adopt it as a final and complete expression. Here, the final agreement reached was obviously incomplete and a nonintegrated agreement. Accordingly, parol evidence was admissible to add to its terms by stating the parties' intent as to its temporary character.

 The letter of September 18, 1967, warning the owner of his failure to live up to the terms of the agreement and indicating that the City contemplated further legal action, was also not offered for proof of the matter asserted, and not properly subject to a hearsay objection. The September letter was properly admitted to demonstrate that before the City took any further action by reinstituting the action for an injunction, the owner was then on notice concerning the condition of the building.

 The owner contends that Building Inspector Fisher conducted an unlawful search of the locked premises and all of his testimony was there-

fore inadmissible under the holdings of *Camara* v. *Municipal Court,* 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727], and *See* v. *City of Seattle,* 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737]. The owner's contention is based on the testimony of his watchman who indicated that he had never seen any of the locks opened or the padlock broken off. Building Inspector Fisher testified that the locks were broken and observed several major code violations through an open door, including plaster on the floors, and large holes in the ceiling, as well as another hole in the back sufficiently large to permit persons to enter. Thus, at the time of his arrival, Fisher not only saw a number of conditions violating the code, but also had knowledge of the complaints of itinerants in the building. With this knowledge, he entered the open building to further investigate whether there were any unauthorized persons on the premises. ■ It is well settled that to observe what is perfectly apparent to any member of the public who happens to be near the premises is not a search (*People* v. *Willard,* 238 Cal.App.2d 292 [47 Cal.Rptr. 734]; *People* v. *Norton,* 209 Cal.App.2d 173 [25 Cal. Rptr. 676]; *People* v. *Young,* 214 Cal.App.2d 131 [29 Cal.Rptr. 492]). ■ Accordingly, the record does not support the contention that Inspector Fisher's entry and observations were the result of an unlawful entry or search.

The cases cited by the owner do not support his contention factually or legally. In *Camara, supra,* the United States Supreme Court held that a lessee of an apartment had a constitutional right to insist that a building inspector obtain a warrant prior to entering for the purpose of making an inspection under the City Housing Code; in the companion case of *See* v. *Seattle, supra,* the United States Supreme Court held that a fire inspector needed a warrant to authorize entry into a locked warehouse. Thus, neither case involved a vacant, uninhabited structure such as the building here in issue. It is questionable whether an entirely vacant building, used neither for a residence nor a commercial purpose, encompasses any privacy of the kind protected by the Fourth Amendment (*People* v. *Willard, supra*). ■ Furthermore, as pointed out in the *Seattle* case, the Fourth Amendment protects only against administrative entry without consent on portions of premises that are not open to the public. ■ In the instant case, the premises were not only open but pursuant to the agreement the owner promised to keep the premises barricaded and free of intruders and thus impliedly consented to the City's inspection of the premises to monitor his compliance therewith after the City received complaints concerning the presence of unauthorized persons.[1] Thus, neither *Camara* nor the *See* v.

---

[1]Even if no implied consent can arise from the terms of the agreement itself, we think there is no question that such consent necessarily arose after the City received complaints from third persons that the agreement was being violated.

*Seattle* case is inconsistent with Inspector Fisher's visit here. This conclusion is buttressed by *Wyman* v. *James* (1971) 400 U.S. 309 [27 L.Ed.2d 408, 91 S.Ct. 381], wherein the United States Supreme Court upheld, against similar Fourth Amendment contentions, an administrative home visit that was not forced or compelled and was conducted by an administrative official during business hours. We conclude that the trial court properly admitted Fisher's testimony.

■ Next, the owner contends that the trial court erroneously applied the provisions of the City's Municipal Code to the unoccupied and vacant building. For his remarkable contention that the Municipal Code applies only to occupied buildings, the owner cites sections 101 and 104 of the Municipal Housing Code, set forth, so far as pertinent, in the footnote below.[2] However, the precise language of section 101 indicates that while the code protects occupants, it is also designed to "protect and promote the existence of sound and wholesome residential buildings, dwelling units *and neighborhoods . . .*" (italics added). Accordingly, the trial court properly concluded that the provisions of the Municipal Housing Code are designed for the welfare of both occupants and the public, and that the City may enforce the provisions on unoccupied buildings as well as on those that are occupied. This is a sensible interpretation in accordance with the usual rule of construction (*Abbey* v. *Board of Directors,* 58 Cal.App. 757, 760 [209 P. 709]).

■ Finally, the owner argues that the evidence was insufficient to support the trial court's finding that the building constituted both statutory and common law nuisance. Preliminarily, we note that the owner here failed to object to the findings, to request special findings, or to call the court's attention to any omissions, ambiguities or conflicts. Accordingly, the owner waived its right to object to the findings on appeal (*Corrigan* v. *Stiltz,* 233 Cal.App.2d 381 [43 Cal.Rptr. 548]). Thus, any ambiguities must be resolved in favor of the judgment (Code Civ. Proc., § 634; *Millbrae Assn. for Residential Survival* v. *City of Millbrae,* 262 Cal.App.2d 222, 226 [69 Cal.Rptr. 251]). We deem it our duty, however, to briefly comment on the contentions raised.

■ The owner first asserts that the findings of a fire hazard and a

[2]Section 101: "That it is in the public interest of the people of San Francisco to protect and promote the existence of sound and wholesome residential buildings, dwelling units and neighborhoods by the adoption and enforcement of such standards, regulations and procedures as will remedy the existence or prevent the development or creation of dangerous, substandard, insanitary or obsolete and deficient buildings and dwelling units."

Section 104: "Scope. The provisions of this code shall apply to all buildings or portions thereof, used or designed or intended to be used for human habitation."

hazard to the health and safety of the public were insufficient as they lacked any specific supporting statement of facts. But, the court's findings were ultimate facts and the rule is clear that such facts will suffice (Witkin, Cal. Procedure (1954) Pleadings, p. 1843). The complaint filed pleaded numerous statutory violations, including the California Administrative Code, title 8, chapter 9, and 23 violations of various portions of the City's Municipal Code. The trial court made an ultimate finding of fact that the statutory violations existed and, therefore, was not required to make a specific evidentiary finding for each violation (*Lewetzow* v. *Sapiro,* 188 Cal.App.2d 841 [11 Cal.Rptr. 126]).

■ In the instant case, there is abundant evidence to support the finding of statutory nuisance. The City introduced the evidence of its fire inspector, Lieutenant Hallstrom, concerning the lack of proper barricading . and the fact that apparently on a number of occasions, some transient persons had gained access to the building. Lieutenant Hallstrom further testified that the building here in question was a hazard as there was no fire protection because of the open staircase, burned out walls, plenty of combustibles, and no maintenance. In his opinion, there would be no way to contain a fire in such a building. Here, the fact that the roof was 90 percent collapsed and that there was a hole in the rear wall large enough to allow someone to enter was controverted only by the owner's witness, who merely denied the presence of any of the conditions testified to by the City's witnesses.

. The pertinent portion of the then applicable section of the California Administrative Code, title 8, chapter 9, defined a fire hazard as any building or portion thereof which in the opinion of the enforcement agency is in such a condition as to cause a fire or explosion or provide a ready fuel to augment the spread and intensity of fire or explosion arising from any cause. Lieutenant Hallstrom's independent testimony alone was a sufficient basis for the trial court to make its ultimate finding of a statutory nuisance as defined above.

■ The owner next argues that the court did not have sufficient evidence to support its finding of common law nuisance and again complains that the evidence was entirely conclusionary. The record indicates that the witnesses who resided in the neighborhood, Mr. Scafidi and Mrs. Ottoboni, indicated that their neighboring property was blackened by soot from the building. In addition, as indicated above, Lieutenant Hallstrom testified that the building was a fire hazard. ■ It is well settled that a fire hazard is a public nuisance (*County of San Diego* v. *Carlstrom,* 196

Cal.App.2d 485 [16 Cal.Rptr. 667]), and that the proper remedy for abatement of a nuisance is a mandatory injunction. As stated in *City of Bakersfield* v. *Miller,* 64 Cal.2d 93, 103 [48 Cal.Rptr. 889, 410 P.2d 393]: "In appropriate circumstances, a governmental agency may abate a public nuisance even though to do so requires that a building be demolished."

Affirmed.

Shoemaker, P. J., and David, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.