[Civ. No. 13918. Third Dist. Nov. 29, 1973.]

■JOSEPH LEACH, Plaintiff and Respondent, v.
DAVID B. SWOAP, as Director, etc., Defendant and Appellant.

[redacted]

## Counsel

Evelle J. Younger, Attorney General, N. Eugene Hill and Jeffrey L. Gunther, Deputy Attorneys General, for Defendant and Appellant.

Ralph Santiago Abascal and Jay-Allen Eisen for Plaintiff and Respondent.

## Opinion

**REGAN, Acting P. J.**—On April 11, 1972, petitioner Joseph Leach filed in the Superior Court of Sacramento County a petition for writ of mandamus and declaratory relief to reverse a fair hearing decision of the Director of the State Department of Social Welfare ("Director") and to declare the regulations under which the Director acted to be invalid. The

trial court found in favor of the petitioner and granted a peremptory writ of mandate. The Director appeals.[1]

Petitioner has been a recipient of ATD (aid to the totally disabled) since 1962. His eligibility for a basic subsistence grant is based upon the multiple afflictions he suffers. Because of the physical limitations which these conditions cause, petitioner has required and received an attendant care grant to pay for needed services.[2] This attendant performs many duties for petitioner, including bathing him and attending to his toilet needs.

Until December of 1970, petitioner received the maximum attendant care allowance of $300 per month. After he married Mrs. Leach,[3] petitioner's attendant care grant was reduced by the County of San Francisco to $200 pursuant to former EAS section 44-239.264.[4] That regulation fixed a maximum $200 per month payment to attendant care recipients who share housing with other attendant care recipients. As a result, petitioner was forced to reduce the amount of time his attendant worked and consequently his condition deteriorated.

The petitioner timely requested a fair hearing. The fair hearing decision adopted by the Director found the county had correctly applied the state regulation.

Petitioner then filed his petition for writ of mandate and declaratory relief seeking to have his current attendant care grant increased to the statutory limit of $300 (Welf. & Inst. Code, § 13931),[5] and also asking for a retroactive award of benefits. The court ruled in favor of petitioner on all points and granted the writ.

The judgment, in effect, orders the Director to pay the petitioner *retroactive* payments for attendant services. On this appeal, the Director contests that aspect of the lower court's judgment.

---

[1] The Director has limited his appeal to the following issue: "May the court order retroactive payment for services in absence of a showing that the services have [been] performed and an indebtedness for these services created."

[2] "Attendant services" are defined as domestic or personal care services provided in the recipient's own home. (Eligibility and Assistance Manual (EAS), section 44-239.)

[3] Mrs. Leach is also disabled (cerebral palsy) and a recipient of ATD. She has her own attendant who performs various services for her.

[4] The basic ATD grants to petitioner and his wife were unaffected by this ruling.

[5] All section references are to the Welfare and Institutions Code.

The Director first contends that the trial court did not apply the fundamental distinction that exists between the basic "money payment" aid grant and "services." (§§ 13700, 13931.) The basic "money payment" aid grant is designed to enable a recipient "to maintain himself in decency and health" (§ 13700), and there are no directives which tell the recipient what to buy with this grant of money. (§ 10501.) In contradistinction, the dollars provided for "services" must go to the attendant in payment for services which the attendant has provided. (§ 13931; see EAS, § 44-239.)

Based upon this premise, the Director argues that unlike basic "money payment" aid, services (such as attendant care) if not rendered at the time they are needed are irretrievably lost (e.g., a bath not taken because of lack of assistance can never be made up for at a later time). In other words, the Director is arguing that *services cannot be retroactively purchased.*

Although the distinction drawn by the Director is superficially accurate, we think it misses the point. Because a money grant is authorized under specified circumstances for attendant care services does not make those payments any less "aid."[6] Secondly, the Director's argument could be made equally applicable to the basic grant (e.g., a hamburger not eaten can never be made up for at a later time by eating two, three or more). Furthermore, we think the Director has tried to make an artificial distinction between the basic subsistence grant and what he terms "services." The code defines "services" as "those activities and functions performed by social work staff and related personnel of the department [of Social Welfare] and county departments with or in behalf of individuals or families . . . ." (§ 10053.) Attendant care, of course, is not provided by these people. ■ In effect, the attendant care grant (just as the basic subsistence grant) is a cash payment provided for the purchase of specified needs. Because the attendant care grant is restricted as to purpose should not make it any less subject to the rule of retroactivity.[7] We there-

---

[6] "'Aid' means financial assistance provided to or in behalf of needy persons under the terms of this division, including direct money payments, vendor payments and medical care." (§ 10052; see also § 13700.)

[7] A similar argument was made in a recent federal case concerning food stamps. The Secretary of Agriculture argued, in effect, that a service not rendered when needed is irretrievably lost. The court rejected this contention holding that a right to receive benefits under the Food Stamp Program is a statutory entitlement, and that deprivation of the right to receive benefits under the program is a denial of property without due process. Although the court declined to make a retroactive adjustment (because forbidden by a U.S. Department of Agriculture regulation), it did direct a "forward adjustment of food stamps." (*Tindall* v. *Hardin* (W.D.Pa. 1972) 337 F.Supp. 563, 565-566.)

fore disagree with the Director's basic premise that there is a fundamental distinction between basic subsistence aid and services.

Support is found in the decisional law. In *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 81 [162 P.2d 638], the board sought to compel the county to make retroactive welfare payments to various individuals who had been granted amounts less than those to which state legislation entitled them. The county argued that such payments would be constitutionally improper (i.e., a gift of public money) absent a finding of "present need." The court rejected this argument, stating (at pp. 85-86): "In the case now before us we are of the view that the provisions for appeal to the State Social Welfare Board and for 'the payments, if awarded, to commence from the date the applicant was first entitled thereto' likewise subserve a clear public purpose by securing to those entitled to aid the full payment thereof 'from the date . . . [they were] first entitled thereto' regardless of errors or delays by local authorities. It was the mandatory duty of the county to furnish aid according to the plan therefor which is laid down by the applicable provisions of the Welfare and Institutions Code. [Citations.] The obligation to pay became a debt due from the county to the applicant as of the date the latter was first entitled to receive the aid. [Citation.] The bare fact that an applicant has by one means or another managed to ward off starvation pending receipt of the payments to which he was previously entitled provides no sufficient excuse for a county to make such payments. To hold otherwise would, as suggested by petitioner herein, provide a money-saving device for the counties at the expense of those of our citizenry least able to bear the burden thereof." (See *Mooney* v. *Pickett* (1972) 26 Cal.App.3d 431, 435-436 [102 Cal.Rptr. 708], and federal cases cited therein; see also *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 749-750 [97 Cal. Rptr. 385, 488 P.2d 953].)

In *Mooney* v. *Pickett, supra,* 26 Cal.App.3d at page 435, the court, relying upon an earlier case of the same name, *Mooney* v. *Pickett* (1971) 4 Cal.3d 669 [94 Cal.Rptr. 279, 483 P.2d 1231], and *Bd. of Soc. Welfare, supra,* recognized and applied the dual concept of *debt* and *public policy,* and stated: "In *Mooney* v. *Pickett, supra,* the Supreme Court stressed that section 17000 of the Welfare and Institutions Code, pursuant to which appellant sought General Assistance, 'imposes a mandatory duty upon the counties to support "all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident." ' (*Id.* at p. 676.) Consequently, the obligation to provide appellant with General Assistance became a debt due from the county as of the date he was first entitled thereto. By requiring such retroactive payments to be made by the county, the public

policy of securing to those entitled to aid the full payment thereof, from the date they were first entitled thereto, regardless of errors and delays by local authorities, is promoted."

It must be kept in mind that the Director does not dispute his past failure to comply with the statutory directive. (§ 13931.) By appealing only that portion of the judgment relating to retroactivity, the Director concedes that payments were withheld from petitioner contrary to controlling law.[8] As we have seen from the foregoing analysis, and the applicable decisional law, the Director's argument based upon an alleged distinction between services and the basic subsistence grant lacks merit. In this respect, we note the language in *Alexander* v. *Weaver* (N.D.Ill. 1972) 345 F.Supp. 666, 675: "Once eligibility exists the State's commitment to provide that income vests in and accrues to that individual and where that commitment is not met due to an unconstitutional withholding of benefits it must be made up to cover that period during which it was wrongfully denied. The fact that one has survived that 'brutal need' without assistance does not wipe out the right to assistance that was vested at the time of need and does not permit the consideration of current circumstance.

"The situation is not unlike that of the State's wrongful withholding of salary over a period of time from some of its employees and when the determination is made that the withholding was unconstitutional there is no question that back pay is warranted since the salary accrued at the time of its wrongful denial and it is no defense to say that the employees current improved financial status warrants a denial of retroactive pay.

"The benefits having accrued to the eligible recipients in our case, a manner of a constructive trust was imposed on the state regarding these funds pending release on subsequent submission of proof of eligibility."

■ The Director next contends that the ordering of payments for retroactive attendant care services to the petitioner would have an adverse effect on the size of the ATD grant of petitioner and others currently in need. He relies upon section 13700 which, in general, provides for a $100 recipient grant *average* limit. For example, in the event the average grant per recipient exceeds $100, the department is required to take immediate steps to reduce or curtail payments for attendant services or

---

[8]"Just as the state may not operate an AFDC plan violative of federal statutory requirements, a county may not adopt welfare regulations inconsistent with state statute." (*Mooney* v. *Pickett, supra,* 26 Cal.App.3d at p. 436.)

other special services to the end that the monthly average per recipient per fiscal year does not exceed $100. (§ 13700.)

However, there is no evidence whatsoever in the record to indicate that the ATD grants are approaching the $100 average limit. Furthermore, it is difficult to perceive how the single award of the retroactive payment to petitioner will significantly alter whatever average grant presently exists. We think the Director's argument is mere speculation.

The Director contends that the instant case is one of first impression since he could find no other published decisions which deal with the issuance of retroactive attendant care services. He then argues that this situation is analogous to a request that the court order specific performance when the enforcement of such performance would be impossible or inequitable. (See, e.g., *Herzog* v. *Atchison Topeka etc., R. R.* (1908) 153 Cal. 496, 500 [95 P. 898].) He bases this analogy upon the ground that lost services cannot be retroactively performed. As we have previously explained, the analogy argued here is left wanting because there is no inability to render the performance, i.e., to satisfy the Director's duty to make money payments required by controlling legislation.

Finally, the Director contends a new test should be formulated by the courts to govern the order of retroactive payments for wrongfully denied services. In particular, the Director proposes that the following test should control the issuance of retroactive payment for services:

"1. Was the claimant in need of the services claimed during the time of alleged denial?

"2. Was the claimant otherwise eligible for attendant services during the time of alleged denial?

"3. Were services in fact rendered by an attendant and paid for by the claimant; or did the claimant incur an indebtedness for these services?"[9]

The Director contends the application of the above test will help to prevent fraudulent claims as well as provide a true measure of compensation for the claimant. For support, the Director relies upon *Rothstein* v. *Wyman* (2d Cir. 1972) 467 F.2d 226. The court in *Rothstein* noted that court-ordered retroactive payments might be thought to further three *congressional* interests: (1) to deter wilful state violations of federal re-

---

[9]The Director notes that the Department of Social Welfare by order dated March 3, 1973, has ensured that petitioner may recover any sums he has actually expended to obtain the services to which he was entitled under this test.

quirements; (2) to satisfy ascertained needs of impoverished persons; and (3) to protect the interest of the federal government as grantor in the proper use of granted funds. (467 F.2d at pp. 234-235.) Based upon the foregoing considerations, the court held (at pp. 235-236) "that the award by the District Court of retroactive payments in the circumstances of this record was an improvident exercise of its equity powers when measured by 'the principles of equity, comity, and federalism' . . . ."[10]

■ The Director concludes that there is no basis for awarding retroactive payments for services *in the absence of a showing that the services have been rendered with obligations for payment for them.* If this were true, this would be the situation: A recipient is denied his full share of benefits by illegal state or local action; since he does not have available money, he can neither pay for nor contract for needed services; therefore, since he has incurred no monetary obligations, retroactive payment should be denied. To state the argument is to answer it.

Secondly, and as previously noted, the contention rubs against the grain of the California decisions and other federal decisions. Even *Rothstein* recognized that state courts could make their own policy with regard to retroactive payments. (467 F.2d at pp. 241-242.) Furthermore, the Supreme Court in *Bd. of Soc. Welfare, supra,* 27 Cal.2d 81, effectively answered the equity arguments set forth in *Rothstein.* Conversely, *Rothstein* did not meet the *debt* theory propounded by our Supreme Court in *Bd. of Soc. Welfare* and expanded upon in *Mooney.* (26 Cal.App.3d 431.)

The judgment is affirmed.

Janes, J., and Vasey, J.,* concurred.

---

[10]The decision in *Rothstein* was also based on the Eleventh Amendment which provides that the federal judicial power does not extend to suits against a state. (467 F.2d at pp. 236, 241.) This notion was dispelled in *Jordan* v. *Weaver* (7th Cir. 1973) 472 F.2d 985, 989-990, citing United States Supreme Court decisions.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.