[Civ. No. 14745. Third Dist. Sept. 19, 1975.]

RUTH LaRUE, Plaintiff and Appellant, v.
DAVID B. SWOAP, as Director, etc., et al., Defendants and Respondents.

**COUNSEL**

Eugene M. Swann and Carmen L. Massey for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, Edmund E. White and Richard M. Skinner, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**REGAN, J.**—Petitioner filed a petition for a writ of mandamus to compel defendants (hereafter "defendant" or "director") to provide retroactive relief to petitioner whose food stamps over a period of time had been erroneously denied her.[1] The trial court sustained defendant's demurrer to an amended petition for mandamus without leave to amend on the grounds that the petition did not state facts sufficient to constitute a cause of action, the court had no jurisdiction of the subject cause of action alleged in the petition, and there was a defect or misjoinder of parties. Petitioner appeals from the judgment of dismissal, contending:

1. Petitioner was wrongfully denied food stamp benefits and this wrong should be remedied through retroactive relief.

2. There was neither misjoinder of parties nor lack of jurisdiction in the within action.

    a. Section 10962 of the Welfare and Institutions Code provides for the sole method of reviewing a final decision of, and that the sole respondent in such action is, the Director of the Department of Benefit Payments.

    b. The Director of the Department of Benefit Payments is estopped from claiming that other parties must be joined as respondents.

    c. Any joinder of additional parties respondent must be initiated by respondent Director of the Department of Benefit Payments.

3. Mandamus is the proper means to obtain relief when an administrative official has abused his discretionary authority.

4. The first amended petition for a writ of mandamus does state a cause of action upon which relief can be based.

Sometime in the early part of 1972, petitioner applied for benefits under the federal program (Food Stamp Act of 1964) which provides food stamps. (7 U.S.C.A. §§ 2011-2025.) The United States Department of Agriculture ("USDA") administers this program under which, at the

---

[1] The main purpose of the writ was to command defendant to provide petitioner "a forward adjustment of the price of future [food] stamps" commensurate with the amount of benefits denied her due to the past county error.

request of the states, low income households are enabled to purchase at a discount from their redeemable value, food stamps which may be used to obtain a nutritionally adequate diet. (*Tindall* v. *Hardin* (W.D.Pa. 1972) 337 F.Supp. 563, 564-565; affd. sub. nom. *Carter* v. *Butz* (3d Cir. 1973) 479 F.2d 1084, 1085-1086, 1089; cert. den., 414 U.S. 1103 [38 L.Ed.2d 559, 94 S.Ct. 737].)

Food stamp benefits are paid for with federal monies appropriated to and expended by USDA. (7 U.S.C.A. §§ 2013(a), 2025.) The stamps (or coupons) issued and used under the program are redeemable at face value by USDA through the facilities of the Treasury of the United States. (7 U.S.C.A. § 2013(a).)[2] States participating in the program, however, are required to bear the costs of certain designated administrative responsibilities under the program. (7 U.S.C.A. § 2024.)

The provision of food stamps to eligible persons is administered at the federal level by the Secretary of USDA, who is empowered to issue such regulations as he deems necessary or appropriate for the effective and efficient administration of the food stamp program. (7 U.S.C.A. § 2013.) States desiring to participate in the program must submit a plan of operation specifying the manner in which the program will be conducted within the state (7 U.S.C.A. § 2019(e)), and no plan of operation submitted by a state agency shall be approved unless the standards of eligibility meet those established by the Secretary. (7 U.S.C.A. § 2014(b).)

The secretary has established the Food and Nutrition Service ("FNS") as the agency within USDA responsible for administering the food stamp program. (7 C.F.R. §§ 270.2(y), 270.3(a).)

As a condition of receiving federal benefits, the federal regulations provide: "Each State agency shall administer the [food stamp] program in accordance with the provisions of [Subchapter C of title 7, C.F.R. Food Stamp Program], all FNS instructions issued pursuant thereto, and its Plan of Operation." (7 C.F.R. § 271.1(j).)

FNS requires that the state's plan of operation contain an agreement that the state agency in charge of the administration of the program will conform with all FNS requirements and instructions (7 C.F.R. § 271.8(c)(1)), and prohibits any change in the state's plan or any revision

---

[2] Apparently California has never appropriated any money to pay for food stamp benefits.

of instructions issued by FNS without prior approval of FNS. (7 C.F.R. § 271.8(d).)

Issuance of food stamp coupons in circumstances not authorized under the federal program and implementing regulations could possibly subject state administrative personnel (or their delegates) to criminal prosecution. (See 7 U.S.C.A. § 2023(b); 7 C.F.R. § 270.4(b).)

Petitioner is the head of a household which receives a monthly AFDC (Aid to Families with Dependent Children—42 U.S.C.A. § 601 et seq.) grant. On April 3, 1972, Contra Costa County notified petitioner that her application for food stamps was granted effective April 1, 1972. That same notice, however, stated that food stamp authorization was to be terminated on April 30, 1972, based on a determination that her income, combined with the income of an adult male living in the household, exceeded the limit for the household.

On April 20, 1972, petitioner, pursuant to Welfare and Institutions Code section 10950, filed a request for a fair hearing with defendant alleging that her food stamp authorization had been improperly terminated.

On October 16, 1972, the hearing examiner decided in petitioner's favor (for reasons not pertinent here), and ordered her restored to the food stamp eligibility rolls. However, the examiner also decided that no retroactive adjustment of benefits could be made even though benefits were wrongfully denied, relying upon a regulation promulgated by defendant (Food Stamp Manual of Policies and Procedures ["MMP"], § 63-408.5).

This decision was adopted by the defendant Director of the Department of Social Welfare (now Benefit Payments) on October 30, 1972.

Sometime in the early part of 1972, when petitioner applied for food stamps, apparently USDA policy regarding retroactive award of food stamps was set forth in FNS Instruction 732-14 IV-D, which provided: " 'Past food consumption cannot be increased or otherwise altered. Therefore, following the hearing decision, retroactive adjustments in favor of the household shall not be permitted.' " (*Bermudez* v. *United States Department of Agriculture* (1973) 490 F.2d 718, 720, fn. 2 [160 App.D.C. 150].)

At the time the defendant rendered his fair hearing decision, FNS Instruction No. 732-14 was in effect. However, on August 28, 1972, the instruction was amended to provide generally as follows: "This prohibition [against retroactive adjustments] should not be construed to limit State Agencies in any way from issuing retroactive benefits to households from State monies." (FNS Instruction 732-14 V-D.)[3]

In *Carter* v. *Butz,*[4] *supra,* 479 F.2d at page 1085, the court describes the posture of the case before it: "In this action heads of households who were beneficiaries of the federal food stamp program sought relief in the district court against the federal Secretary of Agriculture and the Pennsylvania Welfare Department for the deprivation of food stamps which resulted from administrative errors committed by officials of the Welfare Department. The district court judgment provided that the arrearages in food stamp allotments be cured by a forward adjustment of the amount of purchase discount which would be allowed to each plaintiff in the purchase of future monthly food stamps allotments. The effect of this judgment was to grant full relief to the plaintiffs at the expense of the Federal Government."

The federal court of appeal, in affirming the judgment of the district court, made the following comment: "Forward adjustment rather than retroactive payment of benefits from any source, state or federal, is more consistent with the federal purpose of assuring current use of the stamps for nutritional purposes." (*Id.* at p. 1089.)

The United States Supreme Court denied certiorari in *Carter* and *Bermudez* on December 10, 1973. (414 U.S. 1103, 1104 [38 L.Ed.2d 559, 94 S.Ct. 737].) On January 3, 1974, the USDA sent a telegram to all state administrators of the food stamp program (including the defendant Swoap) directing them "to make retroactive benefits available to households which (1) are certified to participate in the program, (2) have requested a fair hearing on or after July 31, 1972, and (3) are determined by the fair hearing process to be entitled to lost food stamp benefits."[5]

---

[3]State MMP section 63-408.5 was reissued on February 1, 1973. However, it still contained the language prohibiting retroactive adjustments that were in effect on October 30, 1972.

[4]This case was decided on May 29, 1973.

[5]Petitioner's request for a fair hearing was made on April 20, 1972. A rehearing was requested by petitioner on November 29, 1972. The director denied this request and advised petitioner that any review of his decision must be pursuant to section 10962 of the Welfare and Institutions Code in a superior court of California.

Thereafter, defendant promulgated a regulation reflecting the new instructions of USDA.

The date set by the USDA was apparently arrived at through a combination of the court's denial of certiorari in *Carter* and the case of *Bermudez* v. *United States Department of Agriculture, supra,* 490 F.2d 718. This latter case afforded nationwide class action relief " 'to all persons who have been wrongfully denied food stamp entitlements and have asked for a fair hearing after the filing of this suit . . . .' " (*Id.* at p. 721, fn. 6; see *Bermudez* v. *U.S. Department of Agriculture* (D.D.C. 1972) 348 F.Supp. 1279.) The Attorney General, on behalf of the defendant, alleges the *Bermudez* action was filed July 31, 1972.

*1. Wrongful Denial of Food Stamps.*

■ It is undisputed that Contra Costa County had erroneously determined petitioner's household to be ineligible to participate in the food stamp program. She maintains that for every wrong there is a remedy (Civ. Code, § 3523; see *Desny* v. *Wilder* (1956) 46 Cal.2d 715, 734 [299 P.2d 257]), and that remedy in the instant case should take the form of retroactive relief, i.e., a forward adjustment of the price of food stamps.[6] In arguing that retroactive relief is proper in this case, petitioner relies on several federal cases. However, it is now settled that the USDA is the responsible party (not the state) where there is a wrongful denial of food stamps (*Stewart* v. *Butz* (6th Cir. 1974) 491 F.2d 165, 166), since Congress has appropriated funds for the payment of the benefits in question, while the states have not. (*Carter* v. *Butz, supra,* 479 F.2d at p. 1088.)

Petitioner also relies upon our holding in *Leach* v. *Swoap* (1973) 35 Cal.App.3d 685 [110 Cal.Rptr. 62], wherein we upheld a judgment

---

[6]The rather checkered career of retroactive benefits is described in the 1972 case of *Bermudez* v. *U.S. Department of Agriculture* (D.D.C. 1972) 348 F.Supp. 1279, 1280, fn. 1, "The first Food and Nutrition Service Instruction 732-14, IV-D (May 28, 1970) denied retroactive benefits; in January, 1971, a statutory amendment provided for 'the granting of a fair hearing and a prompt determination thereafter, to any household aggrieved by the action of a State agency . . .' (7 U.S.C. Sec. 2019(e)(6)). In April, 1971, the federal government attempted to implement regulations expressly authorizing retroactive benefits lost due to administrative error (see 36 Fed.Reg. 7244; 7 C.F.R. Sec. 271.1). These regulations forced the states to pay for retroactive benefits, and they were never implemented allegedly because the states complained of being financially unable to carry that burden. Regulations promulgated in July, 1971, deleted all reference to retroactive benefits; and in September, 1971, defendants issued the INS Instruction 732-14, Sec. V-D [prohibiting retroactive benefits], challenged in this action. On January 18, 1972, in Tindall v. Hardin, 337 F.Supp. 563 (W.D.Pa., 1972) this Instruction was enjoined as to the plaintiffs only and not to their class in that action."

granting retroactive payments under the aid to the disabled program. Although federal funds may have been involved, the case was basically concerned with a *state* commitment and the director did not dispute his past failure to comply with a statutory directive. Thus *Leach* is readily distinguishable.

### 2. *Misjoinder of Parties; Lack of Jurisdiction.*

Petitioner, in a three-pronged argument, contends there was neither misjoinder of parties nor lack of jurisdiction in the instant case.

She first contends that section 10962 of the Welfare and Institutions Code provides the sole method of reviewing a final decision of the Director of the Department of Benefit Payments.

This section provides, in pertinent part, as follows: "The applicant or recipient or the affected county, within one year after receiving notice of the director's final decision, may file a petition with the superior court, under the provisions of section 1094.5 of the Code of Civil Procedure, praying for a review of the entire proceedings in the matter, upon questions of law involved in the case. *Such review, if granted, shall be the exclusive remedy available to the applicant or recipient or county for review of the director's decision. The director shall be the sole respondent in such proceedings.*" (Italics added.)

Petitioner argues that the language of the statute is clear, and therefore the granting of the demurrer on the basis of a defect or misjoinder of the parties is not a sufficient ground for sustaining a demurrer.

Petitioner further contends the defendant is estopped from claiming that other parties must be joined as respondents (defendants). She bases this argument on a form letter signed by defendant denying her petition for rehearing and pointing out that if petitioner was dissatisfied she could proceed pursuant to section 10962 of the Welfare and Institutions Code. She contends she relied upon this statement to her detriment, and therefore equitable estoppel now binds the defendant, citing *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423], where the court states: "The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of

sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel."

We note that petitioner is now raising this issue for the first time on appeal.[7] The burden of pleading facts which raise the issue of estoppel lies with the party who would estop the other party (*Fair Oaks Bank* v. *Johnson* (1926) 198 Cal. 196, 201 [244 P. 335]), and for estoppel to be available it must be specially pleaded. (*Williams* v. *Galloway* (1962) 211 Cal.App.2d 302, 305 [27 Cal.Rptr. 438].) Failure to plead estoppel constitutes a waiver and we need not consider the issue for the first time on appeal. (*Roam* v. *Koop* (1974) 41 Cal.App.3d 1035, 1044-1045 [116 Cal.Rptr. 539]; *City etc. of San Francisco* v. *City Investment Corp.* (1971) 15 Cal.App.3d 1031, 1037 [93 Cal.Rptr. 690].)[8]

Assuming the estoppel argument can be raised, we nonetheless fail to find that estoppel was created by the form letter.

Petitioner relies upon *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]: "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]"

We think the third element is the key here (without conceding that the other three elements have been met). ■ "In order to prove the third essential, it is necessary that the evidence show not only that the party claiming the estoppel did not have actual knowledge of the true facts but that he did not have notice of facts sufficient to put a reasonably prudent man upon inquiry, the pursuit of which would have led to actual knowledge; the convenient or ready means of acquiring knowledge being the equivalent of knowledge [citations]." (*Banco Mercantil* v. *Sauls Inc.* (1956) 140 Cal.App.2d 316, 323 [295 P.2d 55].)

[7]Although petitioner in her brief refers to the letter alluded to in the petition in support of this argument, the pleading in the court below was used not to raise an estoppel but to bolster her argument that defendant was the *sole* respondent.

[8]The director points out the unfairness of petitioner's approach on appeal, since it precluded him from responding to such an argument at the trial level and, in fact, probably constitutes a violation of the California Rules of Court. (See rules 13, 15(a); see also *Robison* v. *Hanley* (1955) 136 Cal.App.2d 820, 827 [289 P.2d 560] [statement in briefs must be supported by appropriate reference to record].)

■ Moreover, "where one acts with full knowledge of plain provisions of law, and their probable effect upon facts within his knowledge, especially where represented by counsel, he can neither claim (1) ignorance of the true facts or (2) reliance to his detriment upon conduct of the person claimed to be estopped, two of the essential elements of equitable estoppel." (*Joseph George, Distr.* v. *Dept. Alc. Control* (1957) 149 Cal.App.2d 702, 712-713 [308 P.2d 773]; quoted with approval in *Cal. Cigarette Concessions* v. *City of L.A.* (1960) 53 Cal.2d 865, 871 [3 Cal.Rptr. 675, 350 P.2d 715].)

■ It is significant that petitioner relied upon the following cases in support of her *initial* petition: *Stewart* v. *Butz* (W.D.Ky. 1973) 356 F.Supp. 1345; *Bermudez* v. *U.S. Department of Agriculture, supra,* 348 F.Supp. 1279; *Tindall* v. *Hardin, supra,* 337 F.Supp. 563.

A reading of these cases reveals the following: (1) the federal government, not the states, funds food stamp benefits, and such benefits are not a state administrative expense; (2) USDA policy (not state) prohibited the award of retroactive benefits; (3) the federal courts had both the jurisdiction, and the inclination, to grant the relief she sought; (4) the federal government, not the states, is liable for retroactive food stamp benefits; and (5) the state agencies administering the program were not even indispensable parties to a federal suit for retroactive benefits.

The court in *Stewart, supra,* stated: "[W]e hold that inasmuch as plaintiff Stewart has a federal statutory right to the food stamps wrongfully withheld from her during May of 1972, there must be a remedy available to her to enforce that right. *The most appropriate place to seek such a remedy is of course this forum.*" (356 F.Supp. at p. 1349; italics in original deleted; other italics supplied.)

In view of the above, it is apparent that petitioner elected to ignore a proven and available route to relief and instead chose a course of action with obvious problems and risks. After defendant's demurrer to the *initial* petition was sustained with leave to amend *(on the same three grounds),* petitioner adamantly persisted in this erroneous course of action. (Cf. *Minnesota* v. *United States* (1939) 305 U.S. 382 [83 L.Ed. 235, 59 S.Ct. 292].)[9] By reason of the foregoing we hold that petitioner's estoppel contention must fail.

---

[9]The federal food stamp act contains no statutory consent of the federal government to be sued in a state court regarding the food stamp program.

Petitioner asserts that all indispensable parties are before the court. As previously noted such is not the case inasmuch as USDA is liable for the payment of food stamp benefits. Conceding this may be so, petitioner argues the joinder of additional parties must be initiated by defendant. She relies upon cases involving joint tortfeasors and indemnitors which are not applicable here since stamp benefits are a *federal* liability. Since the defendant has no purse, he has no liability. (Cf. *California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 108-109 [108 Cal.Rptr. 60].)

*3. Mandamus.*

Petitioner contends that mandamus is a proper means to obtain relief when an administrative official has abused his discretionary authority.

The statement as a general proposition of law is correct but not applicable to the facts of this case. As we noted before, there is no dispute that petitioner was wrongfully denied food stamp benefits. However, the defendant was powerless to act and award retroactive benefits under the applicable federal law. Thus, discretion did not exist, there can be no abuse.

*4. Amended Petition.*

Petitioner contends the first amended petition for a writ of mandamus states a cause of action upon which relief can be granted. (See *Di Lorenzo* v. *Stewart Title Guar. Co.* (1965) 232 Cal.App.2d 839, 843 [43 Cal.Rptr. 261].) She maintains that since it is conceded there was an erroneous denial of food stamp benefits, she is therefore entitled to some relief. (Cf. *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

Again, this proposition is correctly stated as a general matter of law. However, petitioner failed to allege any facts which would indicate that the law binding defendant regarding retroactive food stamps in her case was other than that set forth in the applicable federal regulations.

*5. Summary and Conclusion.*

At the time petitioner brought this action, federal regulations (and state regulations adopted pursuant thereto) prohibited the payment of retroactive food stamp benefits, even though erroneously denied by local

authorities. The states were bound by these regulations and therefore defendant was powerless to act. The form letter sent out by defendant, denying a petition for rehearing, did not create an estoppel.

Through a series of federal cases, it is manifestly clear that the federal government, not the state, is liable for food stamps wrongfully withheld from recipients due to state administrative error. (See, e.g., *Stewart v. Butz, supra,* 356 F.Supp. at pp. 1350-1352.) Petitioner cannot bring herself under the umbrella protection of *Bermudez v. United States Department of Agriculture, supra,* 490 F.2d 718, since she was not a member of the *Bermudez* class. *Bermudez,* and subsequently promulgated federal regulations, applied only to fair hearings requested *after* July 31, 1972, and petitioner requested a fair hearing in her case on April 20, 1972.

Quite simply put, petitioner chose the wrong forum. (See *Stewart v. Butz, supra,* 356 F.Supp. at p. 1349; cf. *Lambert Run Coal Co. v. Baltimore & Ohio R. Co.* (1922) 258 U.S. 377 [66 L.Ed. 671, 675, 42 S.Ct. 349].) The trial court, seeing that petitioner's complaint was against the federal government, not the state, eventually dismissed the action.

On the day of oral argument counsel for the defendant referred to two additional authorities he deemed pertinent to the issues raised in this appeal. We allowed the parties an opportunity to comment on these authorities by letter briefs.

The defendant first cites title 7, Code of Federal Regulations, section 271.7, subdivision (b), effective April 11, 1975, which provides: "(b) In the event that any State agency is sued by any person(s) in a State or Federal Court in any matter which involves its administration of the Food Stamp Program, the State agency shall immediately notify FNS that suit has been brought and shall furnish FNS with copies of the original pleadings and all subsequently filed pleadings. In any such case which involves an attack on or interpretation of the Food Stamp Act, these regulations, or FNS instructions, the State agency shall, upon request of FNS, take such action as is necessary properly to join the United States and/or apprpriate [*sic*] officials of the Federal Government, such as the Secretary of Agriculture or the Administrator of the Food and Nutrition Service, as parties to the suit. In the event that a State agency fails to comply with the provisions of this paragraph and is ordered by a court to take actions under the program which are determined by FNS to be inconsistent with the Food Stamp Act, these

regulations, or FNS instructions, the State agency shall, upon demand by FNS, pay to FNS an amount equal to the value of all bonus coupons issued pursuant to the court order."

This regulation does not aid the petitioner's cause and, in fact, bolsters the conclusions we reach herein. It would appear from the language of the regulation that the federal agency responsible for administering the food stamp program (FNS) is now, for the first time, consenting to a state court suit. This being so, the trial court was also correct in dismissing the action since at that time there was no legal right (or feasibility) of joining the indispensable federal agency. In addition, there is no indication that the regulation is to have any retroactive effect.

The second authority cited is the recent case of *Conrad* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 237 [120 Cal.Rptr. 803]. *Conrad* involved an appeal from a decision of the Unemployment Insurance Appeals Board by a federal employee. The appeals board demurred on the ground that an indispensable party, Conrad's federal employer, had not been joined as a defendant, and the trial court sustained the demurrer on that ground. The appellate court, in reversing, stated the pivotal question was *whether the Social Security Administration was amenable to joinder in the action. (Id.* at p. 241.) The court found *express authority* in the federal statutes that such joinder was feasible, and then stated: ". . . By subjecting the United States to the appeal procedures of the state unemployment compensation law, congress has implicitly waived the sovereign immunity of the United States to suit. [Citation.] Therefore, it was error to dismiss the suit without affording appellant an opportunity to join the SSA." *(Id.* at p. 242.) As previously noted, we find nothing in the Food Stamp Act which expressly (or impliedly) waives the sovereign immunity of the federal government from suit with regard to this program. Thus, *Conrad* is distinguishable from the instant case.

We conclude the trial court properly sustained defendant's demurrer for lack of jurisdiction in the subject matter and the petition failed to state a cause of action against defendant.

The judgment of dismissal is affirmed.

Evans, J., concurred.

**FRIEDMAN, Acting P. J.**—I dissent. The appeal presents three principal questions: (1) whether petitioners are entitled to retroactive relief in

the form of downward adjustment in the price of future food stamp allotments as a means of curing erroneous past deprivations; (2) whether the California courts have jurisdiction to grant this relief through this mandamus action against the state Director of Benefit Payments and (3) whether the federal Department of Agriculture is an indispensable party to the action. I would answer the first two questions in the affirmative, the third in the negative.

As a matter of substantive law, persons who are wrongfully denied food stamps by the administering state agency are entitled to retroactive relief in the form of downward adjustment in the price of future food stamp allotments; that sort of relief, rather than a retroactive award of stamps, is consistent with the statutory purpose of assuring that stamps will be used for nutritional purposes; the cost of the adjustment is to be borne solely by the United States Department of Agriculture and not by the state or its administering agencies. (*Carter* v. *Butz* (3d Cir. 1973) 479 F.2d 1084 (cert. den. Dec. 10; 1973); *Bermudez* v. *United States Department of Agriculture* (1973) 490 F.2d 718 [160 App.D.C. 150] (cert. den. Dec. 10, 1973); *Stewart* v. *Butz* (6th Cir. 1974) 491 F.2d 165.)

The Food Stamp Act of 1954 calls upon each participating state to provide "for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of a State agency . . . ." (7 U.S.C. § 2019(e)(8).) California's fair hearing procedure includes Welfare and Institutions Code section 10962, which supplies the directions for judicial review of administrative appeals decided by the state's Director of Benefit Payments. Section 10962 declares that it is "the exclusive remedy . . . for review of the director's decision." Moreover, it proclaims that the "director shall be the sole respondent in such proceedings." In approving California's participation in the food stamp program, the Secretary of Agriculture approved and consented to the state's "fair hearing" procedures, including section 10962.

After exhausting her "fair hearing" remedies before the state Director of Benefit Payments, petitioner, on October 20, 1973, filed this mandamus action in compliance with the express demands of section 10962. That statute identified her "exclusive remedy." It told her that the state director was to be the "sole respondent." Now, two years later, the majority of this court tell her that she indulged in an "erroneous course of action," that she should have ignored section 10962, should have proceeded in the federal court and could not proceed without naming the Secretary of Agriculture in addition to the "sole respondent" designated by state law.

A host of decisions (whose citation is unnecessary here) affirm the California courts' jurisdiction to review benefit entitlement decisions arising under federal-state cooperative social welfare programs. This is just another social welfare review proceeding. The joint food stamp program differs from other joint programs only in these two respects: (a) the USDA rather than HEW is the federal administering agency; (b) the state bears only administrative expenses and does not share in benefit costs. These are distinctions without juridical effect. Here, as in other joint social welfare programs, the authorized federal agency has approved a state program which places administrative responsibility in the California counties and in the state Department of Benefit Payments; here, as in other social welfare programs, legal errors of the state administrator are correctable through mandamus actions in the state courts. In *Carter, Bermudez* and *Stewart,* the plaintiffs had chosen to assert their food stamp entitlement in federal court actions without reference to any judicial review statute comparable to section 10962 of the California Welfare and Institutions Code. Nothing in those decisions debars parallel holdings via administrative mandamus in the California courts.

On October 29, 1973, when this suit was filed, it stood on the procedural foundation supplied by Welfare and Institutions Code section 10962 and on the substantive foundation supplied by *Carter* v. *Butz,* decided May 29, 1973, and *Bermudez* v. *Butz,* decided October 10, 1973. The former distinctly pointed out that the recipients' right to food stamps was a matter of statutory entitlement. (*Carter* v. *Butz, supra,* 479 F.2d at p. 1087, fn. 10.) Now, according to the majority, petitioners cannot pursue substantive entitlement in the state courts because Congress has not consented to suits against the Secretary of Agriculture in the state courts and because the latter is an indispensable party. That holding effectively nullifies Welfare and Institutions Code section 10962, even though the Secretary of Agriculture approved it as part of California's "fair hearing" mechanism.

The interest of the federal administrator in this lawsuit underwent a change after the lawsuit had been filed. On December 10, 1973, a few weeks after Mrs. LaRue filed this suit, the federal Supreme Court denied certiorari in the *Carter* and *Bermudez* cases. That action confirmed the statutory entitlement not only of the plaintiffs in those cases but also the statutory entitlement of our own petitioner, Mrs. LaRue. The USDA then adopted a regulation purportedly denying entitlement to recipients who had requested a "fair hearing" before July 31, 1972. Mrs. LaRue was one of those recipients.

In my view, the USDA exceeded its implementary authority by interposing an administrative cut-off date to destroy Mrs. LaRue's statutory entitlement. (*Stewart* v. *Butz,* 356 F.Supp. 1345, affd. 491 F.2d 165; cf. 5 U.S.C. § 706.) To the extent that it has an interest in defending its regulation, the USDA acquired that interest after the lawsuit had been filed. It would be naive to suppose it has no knowledge of the lawsuit. Whether or not USDA elects to intervene, its election cannot affect petitioner, who filed this suit in compliance with the letter and spirit of California's federally approved "fair hearing" procedure.

The majority opinion imposes intolerable and expensive choice-of-forum problems upon recipients of joint federal-state welfare programs. It refuses recognition to Welfare and Institutions Code section 10962 as part of California's federally approved "fair hearing" procedure. I would reverse the judgment.